## JOSEPH FORSYTHE, RESPONDENT, *v.* DAVID RICHARDSON, APPELLANT.

STATEMENT.—A statement made on a motion for a new trial may be considered on an appeal from the judgment, for the purpose of determining whether any errors in law were committed by the court below in the progress of the trial.

EXCEPTIONS—STATEMENT.—If it does not appear from the statement made on a motion for a new trial, that any exceptions were taken at the trial to any ruling of the court, the statement is useless on an appeal from the judgment.

TOWN SITE ACT—EQUITY—ACTION.—An action under the town site act to settle the rights of parties to enter lots in such town site, assimilates more to a suit in equity to quiet title than to any other form of action.

DEFINITION—JUDGMENT.—Judgment is a general term for adjudications of a court, and, in its broadest sense, includes decrees.

PARTIES.—In an action to settle rights under the town site act, the mayor of the city is not a necessary party.

PUBLIC LANDS—POSSESSION.—If the public lands of the United States are claimed by virtue of possession alone, the claimant is bound to take such precautionary steps as will advise all the world of his rights.

Appeal from the district court of the second judicial district, Ada county.

*Milton Kelly, J. R. McBride, and Alanson Smith,* for the appellants:

On the question of occupancy, we cite the following authorities: 2 Bl. Com. 3; Id. 8; 2 Kent's Com. 318, 319, 325, 347, 356. As to open and notorious possession by a pre-emption occupant, 4 Wall. 332. As to personal residence, *Barstow* v. *Newman et al.*, 34 Cal. 90.

*Prickett & Hasbrouck,* for the respondent:

The appeal from the order refusing a new trial having been dismissed or waived, we submit that the statement made upon that motion can not be used upon the appeal from the judgment, except for the purpose of considering alleged errors of law occurring at the trial. (*Casgrave* v. *Howland,* 24 Cal. 457.) We do not claim that the statement should be entirely disregarded in every case like the present, but that it can only be used in reviewing the action of the court below so far as it relates to errors in law affecting the judgment, and which are assigned as reasons for a reversal or modification of the judgment, for upon an appeal from a judgment the supreme court will look at the evidence so far only as to see the relevancy of the exceptions taken during the trial. (*Carpentier* v. *Williamson,* 25 Id. 154.)

The findings of the court can not be reviewed on an appeal from a judgment. (*Racouillat* v. *Rene,* 32 Cal. 450; *Gagliardo* v. *Hoberlin,* 18 Id. 394.) The appellate court will not review the facts of the case unless an assignment of error shows that the court below refused an application for a new trial made on the ground that the verdict or decision was contrary to evidence, and that only on appeal from the refusal to grant a new trial. (*Smith* v. *Phelps,* 2 Cal. 121; *Griswold* v. *Sharpe,* Id. 23; *Whitman* v. *Sutter,* 3 Id. 179; *Ingraham* v. *Gildermester,* 2 Id. 483; *Brown* v. *Tolles,* 7 Id. 398; *Reihn* v. *Bogardus,* 13 Id. 73; *Liening* v. *Gould,* Id. 598; *Higher* v. *Peck,* 30 Id. 280.)

The office of a statement is to bring into the record those matters only which arise during the trial, and constitute the basis of a motion, and a specification of the particular grounds of error is the essential element of a statement, and if no specifications are made, the statement will be disregarded. (*Hutton* v. *Reed*, 25 Cal. 483; *Crowther* v. *Rowlandson*, 27 Id. 385; *Moore* v. *Murdock*, 26 Id. 524; *Love* v. *S. N. L. W. & M. Co.*, 32 Id. 639.) There being no errors, either of fact or in law, specified in the statement, this case is to be reviewed on the judgment roll alone, in which there is no error. There were no exceptions taken during the trial.

The exceptions to the findings of fact are not properly before the court. They are not authorized by the statute. It is for defect in the findings only that an exception can be taken. (5th Session Laws, 75.)

WHITSON, J., delivered the opinion. HOLLISTER, J., concurred. NOGGLE, C. J., dissented.

In this case it is conceded that we can only consider the appeal taken from the final judgment—the appeal from the order overruling a new trial not having been taken in time. We have heretofore decided that we might consider the statement made on a motion for a new trial for the purpose of considering any errors alleged to have been committed by the court below in the progress of the trial, even though we might not be able to review the statement on the appeal from the order refusing a new trial. (*Towdy* v. *Ellis*, 22 Cal. 650.)

Upon an inspection of the statement, we fail to find that any exceptions were taken during the progress of the trial, to any ruling of the court; and, therefore, in this case, the statement becomes useless. We are consequently reduced to the consideration of the complaint, answer, and findings of the court, in order to determine whether or not they will support the judgment.

This suit was brought under the provisions of an act of the legislative assembly of the territory entitled "an act to provide for the disposal of lands in Boise city, Ada county,

Idaho territory, pursuant to the several acts of congress in such cases made and provided. This case assimilates more to a suit in equity to quiet title, than to any other form of action either in law or equity. It is urged that the act above referred to requires the conflicting claims to be determined by a final judgment, and that the court decreed the property in question to the plaintiff. This is true, but the court did move it "ordered, adjudged, and decreed." Judgment is a general term, and may be applied to decrees. It being the more general term includes decrees as well; therefore, when the legislature used the term "final judgment," it must be taken in the broadest sense of that term.

It is urged that the mayor ought to have been made a party. We think not, because the law requires that he should receive a certified copy of the judgment, upon which he should execute the deed. This provision was evidently made upon the hypothesis that the mayor would be a stranger to the proceedings in court, and could be informed of the result of the determination only in the manner provided. Even if it be necessary that the mayor be made a party, no question of that kind was raised in the court below, either by demurrer or answer, and it is too late to raise that point here for the first time. The remaining objection to this judgment is, that it is not supported by the findings.

It is a matter of some doubt, whether or not this court can consider findings made solely on the motion of the court. No findings were asked in this case by either party. But, waiving that question, we see no reason for reversing the judgment, on the ground that the findings will not support it.

It appears that the plaintiff had been in possession for a long time before any application was made by the defendant to the mayor for a deed, and that such possession was *bona fide* and without interruption. This was *prima facie* evidence of title, and it devolved upon the defendant to rebut this evidence. We discover nothing in the findings of the court which rebuts this *prima facie* case of the plaintiff; but, on the contrary, find that defendant claimed nothing in the conversation with plaintiff but the house. The find-

ings certainly disclose all the facts to entitle plaintiff to the judgment which the court gave, and they disclose nothing which would entitle defendant to a deed even if plaintiff were not a contestant. It is urged that Southall and Scranton never had any right to the lot in question, and therefore that plaintiff could have deraigned no equitable title from them. This might be admitted without any damage to the plaintiff.

So far as the rights between plaintiff and defendant are concerned, it makes but little difference; both claim their rights from the same source—the plaintiff the right to the lot, and the defendant the right to build the cabin on it. The plaintiff has occupied the lot for several years, and during that time has made valuable improvements on it. He bought out the rights of all those who claimed any right or title in either the cabin or lot, and up to the time when he was first made acquainted with the fact that defendant made any claim to either lot or cabin, he was a *bona fide* purchaser of all interests in both, as also an occupant and improver of the lot. The plaintiff had no means of knowing from the public records of any claim to the lot, and it does not appear that he has ever had any intimation of the defendant's claim by which a reasonable man would be put upon inquiry. If the public lands of the United States are claimed by virtue of the possession alone, those claiming are bound to take such precautionary steps as will advise all the world of their rights. If the defendant placed in charge of his rights one who was untrue to his trust, that is his misfortune, and we do not think the plaintiff ought to lose valuable rights thereby. The defendant ought at all events to have embraced the very first opportunity to inform the plaintiff of his claim to the lot. Instead of this, we find that in the conversation between plaintiff and defendant, which was the first knowledge plaintiff had of any claim by defendant, defendant only claimed the cabin.

The court, in its findings, says:

"That from the proofs, it does not appear, that the plaintiff had any knowledge before his purchase and occu-

pancy of the premises, that the defendant ever had or claimed any title or interest thereon. Nor until May or June, 1868, was he apprised that defendant claimed any such interest. I find that in a conversation at the latter period between plaintiff and defendant, the latter claimed to be the owner of the cabin, and this was the first knowledge plaintiff had of any interest which defendant had or claimed thereto. I further find that at said time, and during said conversation, the plaintiff claimed that he was the owner, as he had purchased it himself, and that since said conversation defendant has never taken any steps, legal or otherwise, to assert his rights to the same, until the time when he filed his application with the mayor for a deed. I find in this conversation that the claim related only to the cabin, and not to the lot in question, and that in such conversation nothing was said by defendant, by which the plaintiff was apprised that defendant claimed to have any interest in the lot." This ought, as it undoubtedly does, estop the defendant from claiming any interest in the lot.

Any other rule would allow the grossest frauds to be practiced upon those who have, in good faith, entered upon the public lands of the United States, and improved them, as it would allow designing persons to step in at any moment and reap the reward of another's toil, when that other had no means by which he might determine the claims of those who might be willing to allow him to be misled, when no amount of diligence could inform him of adverse claimants. The plaintiff had a right to presume that those claiming and in possession were the owners, and in the absence of any record of defendant's claim by which plaintiff or any one else could be advised, it was defendant's duty to see that the innocent were not misled by his own agents.

Exceptions were taken to the findings as not being supported by the evidence, but as we can go only to the statement for the purpose of detecting errors of law committed by the court in the trial of the case, and not for the purpose of determining whether or not the court arrived at the wrong conclusion on matters of fact, those exceptions are immaterial, and can not cut any figure in this case.

Judgment must be affirmed.