City of Pueblo, Plaintiff in Error, v. Budd et al.,
Defendants in Error.

19   579
24   260
24   286

1. Town Sites.
The entry of a town site under the act of Congress (sec. 2387, U. S. R.
S.) being " in trust for the several use and benefit of the occupants
thereof, according to their respective interests," each of such oc-
cupants at the time of the entry became, to the extent of their re-
spective holdings, beneficiaries of the trust, and were vested with
the equitable ownership of the lot or parcel of land to the extent
of their occupancy.

2. Same.
While the execution of the trust, as to the disposal of the lots, etc., was
to be conducted under rules and regulations prescribed by the ter-
ritorial legislatures, neither by such regulations nor by any act of

the trustee not in conformity to the provisions of the act of Congress, could the beneficiary be divested of the right that accrued to him under the trust.

3. SAME.

The limitation in the town site act, relating to the time in which a beneficiary of the trust must deliver a statement of his claim, bars the remedy of one out of possession, but a failure to comply with this provision does not work a forfeiture of the equitable interest of one in possession. The power of a court of equity may be invoked by such possessor to protect such interest or right against an intruder.

4. SAME—STREETS AND ALLEYS.

The town being unincorporated, the inhabitants had a vested right in streets and alleys opened and used at the time of the entry of the town site, but the trustee was not authorized to designate any portion of the site, in the possession of an actual occupant, as a part of a street, and thereby deprive a beneficiary of his interest in the land so occupied.

5. TOWN SITE ACT.

In so far as the town site act attempts to vest the title to unclaimed lands directly in the town, it is in contravention of the act of Congress creating the trust, and void.

*Error to the District Court of Pueblo County.*

THIS is an action instituted by defendants in error to enjoin the city of Pueblo, its officers and agents, from entering upon and opening up a street over a certain lot of land in the city of Pueblo. The case is brought before us upon the complaint, answer, and demurrer to the answer. The complaint states in substance that, on the 19th day of January, 1869, by virtue of an act of Congress approved March 2, A. D. 1867, entitled "An act for the relief of the inhabitants of cities and towns upon the public lands," Mark G. Bradford, then county judge of the county of Pueblo, state of Colorado, entered certain lands as a town site of the town of Pueblo, and thereunder such proceedings were had and taken that on the 5th day of August, A. D. 1869, the United States granted, by patent, unto the said judge of Pueblo county aforesaid, in trust for the several use and benefit of the occupants thereof according to their respective interests, and to his successors in office, the land comprising said town site,

together with all rights, privileges, immunities and appurtenances of whatsoever nature thereunto belonging, in ·trust for the several use and benefit of the occupants thereof according to their respective interests.

That in the year 1867, and long prior to said entry and issuance of patent, Guilford C. Budd and Anna Budd, his wife, who were then and there inhabitants of the town of Pueblo, entered upon, occupied and held exclusive possession and enjoyment of a certain piece and parcel of land, included within said town site, and described as follows :

" Commencing at a point on the east line of what is now Santa Fe avenue in said city of Pueblo, twenty-five feet north of the south line of Third street, as said Third street is platted upon the plat of the town of Pueblo on file in the office of the county clerk and recorder of said Pueblo county, which said plat was prepared by H. M. Fosdick for the probate judge of said county, who entered the lands shown upon said plat as a town site for the town of Pueblo ; thence north along the line of said Santa Fe avenue twenty-two feet ; thence east one hundred and twenty feet ; thence south twenty-two feet ; and thence west one hundred and twenty feet to point of beginning, being in form a right-angled parallelogram:"·

That the said Guilford C. Budd and Anna Budd erected an adobe dwelling and shop thereon, and erected a fence around the remainder thereof not actually covered by the dwelling and shop aforesaid, and occupied and continued in the peaceful and undisturbed possession of said premises, buildings and improvements as a residence, work place and yard, and as inhabitants and occupants of said town and city of Pueblo continuously until the year 1885, when said buildings by wear and tear and the action of the elements became demolished ; and that the said Anna Budd, since the demolition of the buildings aforesaid, up to January 20, 1890, continued to exercise dominion over the whole of said premises, and that the acts in exercising such dominion.were open and notorious, and that from the first day of January, 1874, to

January 1, 1890, no taxes were legally or otherwise assessed upon said lands and premises.

That the said Guilford C. Budd departed this life in the year 1885, leaving as his sole heir at law the said Anna Budd, and that all the debts against his estate have been paid by the administrator thereof.

That on the 2d day of July, 1887, the said Anna Budd sold and conveyed an undivided one third of all her title to John H. Elspass, her coplaintiff in this action ; and thereupon said John H. Elspass, acting for her and with her consent, entered into and upon said premises and erected thereon and around thereof a good and substantial fence at a cost of $25.00, and plaintiffs continued to hold and occupy the same.

That ever since the year 1867, the plaintiffs and their predecessor and grantor have been in the peaceful and undisputed, and in the actual, open, uninterrupted and exclusive possession and occupation of the whole of the parcel of land hereinabove described, holding adversely to all persons since the said last date.

That said Mark G. Bradford, county judge aforesaid, accepted said trust, but has never executed, nor have any of his successors in office executed the trust as to the land hereinabove described; and the plaintiffs as successors of the first occupant of the land are the *cestuis que trust* under said grant from the United States ; that by mutual consent of the inhabitants and occupants of the land entered as such town site, streets and highways were formed and used by the public as such; one of such streets and highways bounding the tract above described on the west, now called Santa Fe avenue, has been used as a street until the present time. And plaintiffs aver that at no time since the settlement and occupation of said public domain was the tract hereinabove described ever used by the inhabitants and occupants as a street, or regarded by such inhabitants as a street ; nor has there ever been any acquiescence on the part of any of the actual occupants since the settlement and occupation of said public domain to the present time in the use of said tract as a street.

That the plaintiff in error, the City of Pueblo, now is and ever since the year 1880 has been a municipal corporation, created and existing under and by virtue of the laws of the state of Colorado.

That the said plaintiff in error, with its agents and assistants did, on the first day of February, 1890, unlawfully break and tear down said fence of defendants in error, erected as aforesaid; and did enter upon said premises to destroy the fence upon and around said lot for the purpose of converting said premises into a street and public highway of said city, and still threatens to continue to lay open as a public highway and street the said premises, and deprive plaintiffs of the use, possession and enjoyment thereof, without tendering or making any compensation therefor; prays that the plaintiffs be decreed to be entitled to the exclusive possession of the lot above described, and that the defendant, the City of Pueblo, its officers and servants, be perpetually enjoined from in any manner entering upon said premises, or in any manner interfering with plaintiffs' exclusive use and occupation, enjoyment and possession thereof.

A demurrer was filed to the complaint and overruled. Thereupon defendants answered:

Averring, *inter alia*, that the said Mark G. Bradford, probate judge, for the purpose of carrying out and performing the trust in him vested, and conveying to the actual occupants of the said lands the portions and parcels to which they were entitled according to their respective interests, caused a map or plat of said land to be made, known as the "Fosdick Plat," and thereby subdividing and laying out said lands in blocks, lots, streets and alleys; and that said lots, blocks, streets and alleys, as indicated on said plat were made substantially as the same were laid out and used by the inhabitants of said premises before and at the time the said plat was made, and caused said plat to be filed in the office of the clerk and recorder of said county of Pueblo as part of the records thereof.

That according to said Fosdick plat the streets of said

town, running in a general east and west direction, were known and numbered as Front, Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth streets; that said streets were parallel to each other and laid out at regular distances and crossed the other streets of the city at right angles and made a regular system of streets for the accommodation of travel and trade going eastward and westward in said town of Pueblo; that said Third street was laid out and used as a street at the time said plat was filed as aforesaid, from the west line of said town of Pueblo up to its point of intersection with Santa Fe avenue, and also from Bradford street, a parallel street to Santa Fe avenue, and distant therefrom about eight hundred feet, to the east line of said town of Pueblo.

That between said Santa Fe avenue and said Bradford street, as indicated on said Fosdick plat, there existed a line of high, precipitous bluffs composed largely of shale and other stone, lying about fifty feet above the grade of said Third street, and that said line of bluffs crossed at nearly right angles the said Third street and all the streets running east and west as described; that travel could not pass over said bluffs until the same were graded and leveled, which could only be done at a cost of many thousands of dollars. That the premises described in plaintiff's complaint is a part and parcel of Third street as laid out and described in said Fosdick plat, and is situate wholly within the lines of said street between Santa Fe avenue and Summit street, and that said street has not been changed or altered in any particular whatsoever, in so far as its course, direction, width and distance are concerned, and in this particular exists as laid out.

That defendant, on information and belief, denies that one Guilford C. Budd entered upon and took possession of the premises described in the complaint herein in the year 1867, and admits that in the year 1871 the said Budd erected a small house thereon, and used the same until the year 1885, since which time the said described premises have not been occupied by said plaintiffs or any one in their behalf, save and except in this particular: That on or about the year

1887, the plaintiffs caused to be erected at the point of inter-
section of Santa Fe avenue and Third street, the same being
the west line of the premises in dispute, and at no other
point of said premises, a board fence which was used as a
bill board for posting bills.  The said premises not being
capable of being used as a highway as an accommodation
for the public at that time, the said fence was permitted to
remain on said premises until on or about the first of Febru-
ary, 1890, when the same was pulled down by said defendant
to open said Third street as a highway.  That neither said
Budd nor the plaintiffs herein claiming under him had any
color of title or claim of any kind to the ownership of said
premises; neither did he nor any one in his behalf make or
file any statement in writing, or otherwise, setting forth his
claim to the tract of land in controversy as provided by sec-
tion 4, article 12, chapter 84 of the Statutes of the Territory
of Colorado, and that no such statement of claim has ever
been filed, and that said plaintiffs are mere trespassers upon
the said described premises.

That said Mark G. Bradford, probate judge as aforesaid,
after conveying to each of the several occupants upon the
lands and premises entered and laid out as the town site of
the town of Pueblo, and hereinbefore particularly described,
according to their respective interests, failed and neglected
to convey to the proper or legal authorities of the town of
Pueblo the lands laid out and used as streets and alleys, and
neither have any of his successors in office made any such
conveyance; and that the legal title in fee is vested in the
county judge of said county of Pueblo as his successor in
trust, and the equitable title of said lands so laid out as
streets and alleys is vested in defendant for the use of the
people as a highway or public street.

A general demurrer was filed to the answer, which was
overruled, and judgment entered in accordance with the
prayer of the complaint.  The city of Pueblo, to reverse
this judgment, brings the case here on error.

Mr. A. W. ARRINGTON, Messrs. GERRY & CAMPBELL, and Messrs. WALDRON & DEVINE, for plaintiff in error.

Messrs. DIXON & DIXON, for defendants in error.

MR. JUSTICE GODDARD delivered the opinion of the court.

The foregoing averments of the complaint and answer sufficiently disclose the facts out of which the present controversy arises, and fully present the questions of law that we are called upon to determine. The averment in the complaint that Guilford C. Budd and Anna Budd were in the actual occupation and possession of the parcel of land in controversy at the time of the entry of the town site is not denied in the answer, and therefore stands admitted; and it is also admitted that neither of said parties, nor any one for them, filed a statement as required by section 4, article 12, chapter 84, of the Statutes of the Territory of Colorado, which enacts as follows:

" Sec. 4. Each and every person or association, or company of persons, claiming to be an occupant or occupants, or to have possession or to be entitled to the occupancy or possession of such lands, or to any lot, block, share or parcel thereof, shall, within ninety days after the first publication of such notice, in person, or by his, her or their duly authorized agent or attorney, sign a statement in writing, containing an accurate description of the particular parcel or parts of land in which he, she or they claim to have an interest, and the specific right, interest or estate therein, which he, she or they claim to be entitled to receive, and deliver the same to, or into the office of such corporate authorities, judge or judges; and all persons failing to sign and deliver such statement, within the time specified in this section, shall be forever barred the right of claiming or recovering such lands, or any interest or estate therein, * * * in any court of law or equity."

It is also admitted that no deed has ever been executed by the trustee conveying the legal title to the land in contro-

versy to any one.   Upon these admitted facts the question presented is whether the interest that inured to Guilford C. Budd and Anna Budd, as actual occupants of the premises in controversy, at the time of the entry of the town site of the town of Pueblo, was forfeited by failure to file the statement as required by the foregoing section.

By the act of Congress approved March 2, 1867, entitled " An act for the relief of the inhabitants of cities and towns upon the public lands," it is provided that (sec. 2387, Rev. Stats. U. S.) :

" Whenever any portion of the public lands have been or may be settled upon and occupied as a town site, not subject to entry under the agricultural pre-emption laws, it is lawful, in case such town be incorporated, for the corporate authorities thereof, and, if not incorporated, for the judge of the county court for the county in which such town is situated, to enter at the proper land office, and at the minimum price, the land so settled and occupied in trust for the several use and benefit of the occupants thereof, according to their respective interests ; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such regulations as may be prescribed by the legislative authority of the state or territory in which the same may be situated."

The entry of the town site therefore being " in trust for the several use and benefit of the occupants thereof, according to their respective interests," each of such occupants at the time of entry became, to the extent of their respective holdings, beneficiaries of the trust, and were vested with the equitable ownership of the lot or parcel of land to the extent of their occupancy.   *Winfield Town Co. v. Maris*, 11 Kan. 128 ; *Rathbone v. Sterling*, 25 Kan. 444.

And while the execution of the trust as to the disposal of the lots, etc., was to be conducted under rules and regulations prescribed by the territorial legislature, neither by such regulations nor by an act of the trustee not in conformity to

the provisions of the foregoing section, could the beneficiary be divested of the right that accrued to him under the trust.

The supreme court of the United States, in the case of *Ashby v. Hall*, 119 U. S. 526, in passing upon this question, say :

" The power vested in the legislature of the territory in the execution of the trust, upon which the entry was made, was confined to regulations for the disposal of the lots and the proceeds of the sales.   These regulations might extend to provisions for the ascertainment of the nature and extent of the occupancy of different claimants of lots, and the execution and delivery to those found to be occupants in good faith of some official recognition of title, in the nature of a conveyance.   But they could not authorize any diminution of the rights of the occupants, when the extent of their occupancy was established.   The entry was in trust for them, and nothing more was necessary than an official recognition of the extent of their occupancy."

The supreme court of Montana, in the case of the *City of Helena v. Albertose*, 8 Mont. 499, speak as follows :

" * * * ; which rules or regulations might guide the mode or manner of executing the trust, but could not substitute one *cestui que trust* for another.   In other words, neither the laws of this territory nor the act of the probate judge could deprive any person of the land occupied by him at the time when the probate judge made entry for the town site, and give such land to one who was not an occupant thereof.   And any attempt so to do would be null and void."

And in *Winfield Town Co. v. Maris, supra*, it is said :

" The moment the land is entered the trust vests an absolute right in the beneficiaries.   There is no provision for the execution of the trust until the local legislature prescribes the necessary rules and regulations, but the legislature can only direct in what manner the trust shall be executed.   It cannot under a pretense of providing rules for the execution of the trust change its character or deprive those for whom it is intended of any benefits of the trust."

The case of *Cofield v. McClellan*, decided by this court in 1871 and reported in 1 Colo. 370, and afterwards affirmed by the supreme court of the United States in 16 Wall. 331, is relied on as establishing the doctrine that a failure to file the required statement *ipso facto* divests the actual occupant of all interest or ownership in the land occupied by him at the time of entry of the town site, notwithstanding the legal title still remains in the trustee. While there are some expressions used in the opinion of the federal court in that case that seem to justify this conclusion, we do not think that when read in the light of the facts of that case they can be held applicable to this case, wherein the facts are materially different. The case there under consideration involved the right of one out of possession, who predicated the right to the lot in question upon a prior occupation, and who had failed to comply with the requirements of section 4 of the statute aforesaid, to recover as against one who was the actual occupant at the time the entry of the town site was made, and who had, in compliance with the statute, filed the statement and procured a conveyance of the legal title from the trustee. In deciding that question the supreme court of the United States say:

" The evidence is strong and quite convincing that at that date (time of entry) as well as at the time of the passage of the enabling act, Mrs. McClellan, the defendant, was in the actual possession of lot No. 6, with valuable improvements made thereon, and paying the taxes on the same. Such must have been the conclusion of the court below, and we concur in it. The result is vital to the plaintiff's right of recovery."

In short, the *decision* of the court was that a failure to file the statement required bars all remedy of one out of possession as against the party in possession, clothed with the legal title.

The town site act in its intent and purpose is analogous to the general pre-emption laws of the government. Section 5 of the pre-emption act of 1843 required that claimants should make known their claims " in writing to the register of the

proper land office within three months from the time of the settlement, giving the designation of the tract and time of settlement; otherwise his claim shall be forfeited," etc. In the case of *Johnson v. Towsley*, 13 Wall. 72, it was insisted in argument that Towsley, having failed to file his declaratory statement within three months from settlement, as required by this section, had forfeited his pre-emption right to the land. Justice Miller, speaking for the court, said in reference to this contention :

" But it is argued that if the pre-emption claim of Towsley was not governed by the 4th section of the act of 1843, it certainly was by the 5th section of that act; and as he did not file his declaration of intention within three months from the time of settlement, his claim was forfeited and gave him no right.

" The record shows undoubtedly that his settlement commenced about eight months before he filed his declaration, and it must be conceded that the land was of that class which had not been proclaimed for sale, and his case must be governed by the provision of that section. It declares that where the party fails to make the declaration within the three months his claim is to be forfeited and the tract awarded to the next settler in order of time on the same tract, who shall have given such notice and otherwise complied with the conditions of the law. * * * If no other party has made a settlement or has given notice of such intention, then no one has been injured by the delay beyond three months; and if at any time after the three months, while the party is still in possession, he makes his declaration, and this is done before any one else has initiated a right of pre-emption by settlement or declaration, we can see no purpose in forbidding him to make his declaration, or in making it void when made. * * * As Towsley's settlement and possession were continuous, and as his declaration was made before Johnson or any one else asserted claim to the land or made a settlement, we think his right was not barred by that section, under a sound construction of its meaning."

If an act that expressly provides a forfeiture upon failure to file a statement in conformity to its requirements is susceptible of this construction, then the provisions of section 4 of the town site act, which provides that a failure to file the required statement shall bar the right to a remedy only, ought not to be construed to work a forfeiture of a vested right in the land, so long as the occupant remains in possession of, or exercises exclusive dominion over the same, and his failure to acquire the legal title thereto does not in any manner affect the rights of others.

The case of *Treadway v. Wilder*, 8 Nev. 91, is more similar in its facts to the case at bar than *Cofield v. McClellan*, and much stronger in support of our construction of the section under consideration because of the fact that the party in possession had failed to file a statement under a similar provision of the town site act. In that case it was said:

"Though an occupant of a town lot, by neglecting to present his claim in accordance with the statute relating to town sites, may be barred of the 'right of claiming or recovering such land or any interest or estate therein,' there is nothing to prevent him from showing, in defense to an ejectment by a person who procures a deed, that such plaintiff has no title, and from thus protecting his possession."

The act of Congress grants an unqualified trust to the occupant, and to construe section 4 of the territorial act as providing for a forfeiture of this trust upon failure to perform a condition subsequent, is to impute to the legislature the design to indirectly divest the interest of the *cestui que trust* under the guise of providing reasonable regulations for the execution of the trust.

This it must be conceded it cannot do directly, and therefore, since such construction would render the act nugatory and void, it ought not to be indulged in when the provision can be upheld as a reasonable regulation in so far as it only bars the remedy to one out of possession. We think the act is clearly susceptible of this interpretation, and that Budd and his wife were vested with an equitable interest in the land in controversy at the time of the town site entry that

has not been lost by the failure to comply with the requirements of section 4 of the town site act, and that the power of the court of equity may be invoked to protect such interest or right against an intruder. Nor do we think that that interest has in any way been impaired by the failure to actually occupy the premises during the entire time if they have retained dominion and control of the property and no right has been initiated thereto by an adverse entry. *Stringfellow v. Cain*, 99 U. S. 610.

The plaintiff in error predicates its right to enter upon the premises principally upon the ground that it became vested with an easement in, upon and over the same by virtue of the act of the trustee in filing a plat of the town site known as the "Fosdick plat," and that by including it within the limits of Third street as designated on the plat the trustee thereby dedicated it to the public use as a common highway. It appears from the pleadings that the land was not used or laid out as a street before or at the time of the entry of the town site; nor has it ever since been so used, and the designation of it as such is first found in the plat filed by the trustee.

The town of Pueblo being unincorporated, the inhabitants had a vested interest in streets and alleys opened and used at the time of the entry of the town site, but they had no interest in the land in dispute as a street that the trustee was authorized to preserve; and his act in designating the same as a part of Third street was unauthorized and void. As was said in the case of *Bingham v. Walla Walla*, 3 Wash. Ter. 68:

"The act, however, did not contemplate the existence of power in any person or authority in the new town to make a plat of lots, blocks, streets and alleys which did not exist as a fact, and to which plat the occupants had not given their assent. * * * The lots, blocks, streets and alleys contemplated by the act, and as to which on the entry of the lands the interest of the public attaches, are those lots, blocks, streets and alleys which exist as a fact at the time of the entry, eitner by actual use or by consent and acquiescence of the occupant affected. * * * While, therefore, the act of

1867 contemplated the existence of streets and alleys in the new towns to which its provisions should apply, it was such streets and alleys as were by common consent used as such —not paper streets and alleys to which the occupant had failed to give assent."

And in the case of *Parchen v. Ashby*, 5 Mont. 68, it is said:

" The rights of occupants accrued before the entry of the town site by the probate judge, and the mere fact that his plat and survey failed to designate a street or alley as it existed before his entry and survey does not thereby destroy such street or alley, and change the ground occupied by the same into a lot that can be sold. And so, for the same reason, if his plat and survey had designated ground theretofore occupied as a lot, as an alley or a street, such designation would not in any manner affect the right of the occupant to his lot. All the powers of the probate judge as trustee are exhausted when he has conveyed to the occupants their lots according to their several rights and interests."

In the case of the *City of Helena v. Albertose, supra,* the court say:

" Undoubtedly the laws of this territory providing for a map, and the act of the probate judge in accordance therewith, were valid and not in conflict with the laws of the United States, when such map designated and established as streets those portions of the town site which had theretofore been used by the public as streets; but when the probate judge undertook to establish by that map a street over lands actually occupied by individuals as a residence when the entry was made by the probate judge, his act was in conflict with the proper execution of his trust.* * * The act of the probate judge, therefore, was void, at least so far as it attempted to deprive occupants of their interests in lands occupied by them, and such act could give to the public no title to the premises against the will of the true occupants."

To the same effect are: *Hall v. Ashby*, 2 Mont. 489; *Alemany v. City of Petaluma*, 38 Cal. 553; *Town of Aspen v. Rucker*, 10 Colo. 184.

These views are in conformity with our legislation on this subject. Section 18 of the town site act provides:

" If the title to any such lands shall be vested in any judge, such judge shall convey to the people, or to the legal authorities; the land *used* or *laid out* by the town authorities as streets," etc.

It is therefore clear that the dedication of the land in dispute as a street was beyond the scope of the trustee's authority and conferred no right or easement upon the town of Pueblo nor upon its successor, the plaintiff in error ; and the right of Budd and his wife as actual occupants were not affected or impaired thereby.

This view is not contravened by the doctrine announced in the *City of Denver v. Clements*, 3 Colo. 472, relied on by plaintiff in error. The question involved in that case was whether the acts of the owner of the land, in selling lots in conformity to a certain plat, constituted a common law dedication of the streets therein shown, which could not afterwards be revoked ; while the question herein involved is not as to the sufficiency of the acts of the trustee to constitute a common law dedication of the street in question, but whether such acts were within the scope of his authority so as to operate as a dedication.

Nor is the further claim relied on by plaintiff in error tenable, to wit : That it became seized of the land in fee simple by virtue of section 4, p. 237 of the Session Laws of 1881. In so far as that provision attempts to vest the title to unclaimed lands directly in the town it is in contravention of the act creating the trust, and therefore void. *City of Denver v. Kent*, 1 Colo. 336 ; *Town of Aspen v. Rucker, supra.*

It follows that neither by dedication as a street nor by virtue of the latter provision, is the plaintiff in error vested with any interest in the land, and its attemped intrusion thereon is an unlawful violation of the rights of defendants in error, and the court below committed no error in decreeing the relief prayed for. The decree is therefore affirmed.

*Affirmed.*