(December 17, 1894.)

## YOUNG v. TINER.

### [38 Pac. 697.]

APPEAL—UNDERTAKING ON APPEAL.—An undertaking on appeal under section 4809 of the Revised Statutes of 1887, intended to apply to more than one appeal, must designate or specify each appeal and will not be construed to apply to appeals not specified therein.

STATEMENT ON MOTION FOR NEW TRIAL—FOR WHAT PURPOSE MAY BE USED.—A statement used on motion for a new trial and made part of the judgment-roll may be used on appeal from the judgment if not taken within sixty days after the rendition thereof for the purpose of determining whether the trial court made any errors in law during the progress of the trial.

EXCEPTION TO VERDICT—APPEAL FROM JUDGMENT.—An exception to the verdict on the ground of the insufficiency of the evidence to justify it cannot be reviewed on an appeal from the judgment unless the appeal is taken within sixty days after the rendition of the judgment.

SAME.—An exception that the "verdict is against law as applied to the facts proven in the case" cannot be reviewed on an appeal from the judgment taken more than sixty days after the rendition of the judgment.

NEW TRIAL—VERDICT AGAINST LAW—WHAT THE STATUTE INTENDS.— The statute, in authorizing a new trial on the ground that the "verdict is against law," does not intend to include in that ground all or any of the other separate grounds enumerated in section 4439 of the Revised Statutes of 1887.

TOWNSITE OCCUPANT—ABANDONMENT—TITLE.—From the facts shown
in the record, *held*, that if appellant ever had any right to the
land in dispute, as a townsite occupant, he abandoned it long be-
fore bringing this action, and at the time of bringing it had no
title to enable him to maintain the action.

SAME.—A townsite occupant must comply with the law in regard to
improvements, occupancy, etc., and make application for deed in
accordance with the law, and pay the price for such land before
he is entitled to a deed, and until he performs those acts and pays
such price he may lose the land claimed by abandonment.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

L. Vineyard, D. D. Williams, and W. E. Borah, for Appel-
lant.

The testimony for both plaintiff and defendant shows that
plaintiff was a townsite occupant at the time the land was en-
tered as a townsite in the United States land office, by Mayor
Prickett on January 13, 1868. If plaintiff, at the time of
the entry, was a townsite occupant, then he had perfect title
to the land, not only as a townsite proprietor, but also by vir-
tue of his prior possession. The first question in the case is,
Did the court err in submitting to the jury the question, was
the land in dispute outside of the patented limits of Boise
City? After the defendant introduced in evidence, as one
of his muniments of title, the deed from the mayor, he was
estopped from denying the recitals therein, said deed contain-
ing among other things, the following: "All the following
described lot, piece or parcel of land, situate within and upon,
and being a portion of the townsite of said Boise City, in the
county of Ada, and State of Idaho." Particular and definite
recitals in deed are conclusive evidence of the material facts
stated. (7 Am. & Eng. Ency. of Law, 7, and cases cited in
note.) The most important question in the case is, Has the
plaintiff such title to the land in question as would be suffi-
cient for him to maintain ejectment, or, an action to recover
the possession? The plaintiff had title, either legal or
equitable, coupled with a right to possession thereunder.
(*Lechler v. Chapin,* 12 Nev. 65.) A townsite occupant upon

the public unsurveyed lands has a possessory title which is suffi-
cient to maintain ejectment whenever his possession is inter-
fered with by a stranger showing no better title. The court
held and instructed the jury that while he could maintain this
action if he had nothing but a bare possessory title, that after
this title had ripened into an absolute one he could not. The
title of a townsite occupant was not weakened by the entry
of the townsite for patent, for this act withdraws the land
from the public domain and converts the holding and posses-
sion thereof into one of private ownership under a survey ap-
proved by the government, and the authorities all hold that,
under such entry, the occupant has a fixed, vested, and absolute
right to the ground he occupies at the date of such entry, and
that it is absolute title under the act of Congress. (*Newhouse
v. Simoni,* 3 Wash. 648, 29 Pac. 263; *Rathbone v. Sterling*.
25 Kan. 444; *Winfield Town Co. v. Maris,* 11 Kan. 121; *Cerf
v. Pfleging,* 94 Cal. 131, 29 Pac. 417; *Stringfellow v. Cain,*
99 U. S. 617; *Ashby v. Hall,* 119 U. S. 526, 7 Sup. Ct. Rep.
308; *Bingham v. Walla Walla,* 3 Wash. Ter. 68, 13 Pac. 411;
*Pueblo v. Budd,* 19 Colo. 579, 36 Pac. 599; *Brooke v. Jordan,*
14 Mont. 375, 36 Pac. 450; *Gitard v. Brown,* 16 How. 495;
*Glasgow v. Horitz,* 1 Black, 600; *Mallard v. Anderson,* 36 La.
Ann. 834; *Burbank v. Ellis,* 7 Neb. 156.) The right to a
patent once vested is treated by the government, when dealing
with the public land, as equivalent to a patent. (*Stark v.
Star,* 6 Wall. 402.) The execution and delivery of the patent,
after the right to it is complete, are the mere ministerial acts
of the officer charged with that duty. (*Barney v. Dolph,* 97
U. S. 652; *Morrow v. Whitney,* 95 U. S. 554.) It is plain
that the government having parted with the title to the land
by the creation of the trust in the mayor for the several use
and benefit of the occupants of the townsites, without any
limitations or duties fastened upon the trustee with reference
to the land so held, is only a passive trust; where the trustee
simply holds the naked legal title in trust for the benefit of
the *cestui que trust,* then he cannot dispossess the latter. The
law executes the trust. (*Ingham v. Burnell,* 31 Kan. 333,
2 Pac. 804; 2 Washburn on Real Property, 405, et seq., 487;

*Saunders v. Edwards,* 2 Jones Eq. (N. C.) 134; *Sherman v. Dodge,* 28 Vt. 26; Martindale on Conveyances, 109, 110; *Richardson v. Stodder,* 100 Mass. 529; *Upham v. Varney,* 15 N. H. 465; *Witham v. Boomer,* 63 Ill. 344.) "The doctrine of abandonment only applies where there has been a mere naked possession without title. The right of the occupant originating in mere possession may, as a matter of course, be lost by abandonment. Where there is title to preserve it, there need be no continuance of possession and the abandonment of the latter cannot affect the rights held by virtue of the former." (*Ferris v. Coover,* 10 Cal. 589 (631); *Webber v. Petty,* 2 Colo. App. 63, 29 Pac. 1016; *Leonard v. Flynn,* 89 Cal. 543, 26 Pac. 1099.)

J. Brumback, S. H. Hays, and H. Z. Johnson, for Respondent.

Plaintiff was not a townsite occupant under the townsite act at the time of the entry of the townsite, to wit, November 23, 1867: 1. Because he did not have the premises inclosed at that time; 2. Because the occupancy was not of the kind required by the townsite act, being for a racetrack only; 3. Because whatever occupancy Young had was under the license and permission of O'Farrell and Arnold. Hence, under no circumstances whatever could he recover. (*Singer Mfg. Co. v. Tillman* (Ariz.), 21 Pac. 818; *Greiner v. Fulton,* 46 Kan. 405, 26 Pac. 705; *Pascoe v. Green,* 18 Colo. 326, 32 Pac. 824.) It conclusively appears that plaintiff abandoned the premises. Under the act of January 6, 1871 (Local Laws, p. 30), occupants were given sixty days in which to make proof of occupancy before the mayor. Plaintiff testified that he made an application for a deed to the premises in controversy. The application shows on its face that it does not include the premises in dispute. It was introduced in evidence by plaintiff himself and cannot be impeached by him. (*Wilson v. Cleaveland,* 30 Cal. 192; *Thompson v. Holbrook,* 1 Idaho, 609.) The racetrack covered only a portion of the premises claimed by plaintiff. The deed from Huston, mayor, to Tiner, conveyed

the title to all the premises in dispute admitting that the premises are within the patent limits. (*Cofield v. McClellan*, 16 Wall. 331; *Chever v. Horner*, 11 Colo. 68, 7 Am. St. Rep. 217, 17 Pac. 495; *Ming v. Foote*, 9 Mont. 201, 23 Pac. 515.) If Young had any title it was an equitable title and not a legal title. (*Jones v. Eureka Imp. Co.*, 53 Ark. 191, 13 S. W. 1094; *City of Helena v. Albertose*, 8 Mont. 499, 20 Pac. 817; *Hussey v. Smith*, 99 U. S. 20; *Eversdon v. Mayhew*, 65 Cal. 163, 3 Pac. 641; *Greathouse v. Heed*, 1 Idaho, 482.) Young had therefore no title on which he could recover in this suit. (*Emeric v. Penniman*, 26 Cal. 120; *O'Connell v. Dougherty*, 32 Cal. 458; *Lawrence v. Webster*, 44 Cal. 385; *Buhne v. Chism*, 48 Cal. 467; *Lynch v. Brigham*, 49 Cal. 137; *Ming v. Foote*, 9 Mont. 201, 23 Pac. 515; *Clark v. Lockwood*, 21 Cal. 220; *Estrade v. Murphy*, 19 Cal. 248.) "The trustee having the legal interest is the only proper person to bring actions at law and to do other things which can be done only by one having the legal estate." (Pomeroy's Equity Jurisprudence, sec. 989.)

SULLIVAN, J.—The appellant (who was the plaintiff in the court below) brought this suit to recover possession of a certain tract of land, containing two and forty one-hundredths acres, situated within the patented townsite of Boise City, claiming to be the owner in fee of said land, and entitled to the possession thereof. The complaint contains the usual allegation required in an action in ejectment. The defendant answered, denying specifically each allegation of the complaint, and avers that he himself is the owner in fee of said premises in the possession, and entitled to the possession thereof, and that he has been the owner of, in the possession of, and entitled to the possession of, said tract of land for more than the ten years next preceding the beginning of this action, and also pleads the statute of limitations. The cause was tried by the court, with a jury, and verdict and judgment given and rendered in favor of the defendant. A motion was made by the defendant for a new trial, and overruled by the court. This

appeal is from the judgment and the order denying the motion for a new trial.

Respondent moves to dismiss the appeal from the order denying the motion for a new trial, on the ground that the appeal bond filed made no reference to an appeal from said order, but only referred to an appeal from the judgment. It was held in *Sebree v. Smith,* 2 Idaho, 357, 16 Pac. 477, that an undertaking on appeal, under section 4809, of the Revised Statutes of 1887, intended to apply to several appeals in the same action, must specify each of such appeals, and will not be construed to apply to appeals not mentioned therein. (See, also, *Eddy v. Van Ness,* 2 Idaho, 101, 6 Pac. 115; *Motherwell v. Taylor,* 2 Idaho, 148, 9 Pac. 417; *Brown v. Hanley,* 3 Idaho, 219, 28 Pac. 425; *Cronin v. Mining Co.,* 3 Idaho, 438, 32 Pac. 53.) We know of no reason for changing the rule laid down in said cases. The appeal from the order denying the motion for a new trial must be dismissed, and it is so ordered. This leaves the case before us on an appeal from the judgment.

Respondent also moves to strike the statement used on motion for a new trial from the transcript. The motion is denied. A statement used on motion for a new trial may be used on an appeal from the judgment, for the purpose of determining whether the trial court made any errors in law during the progress of the trial. (*Forsythe v. Richardson,* 1 Idaho, 459.)

Appellant relies upon and assigns three errors for the reversal of the judgment and said order denying the motion for a new trial, to wit: 1. Insufficiency of the evidence to justify the verdict; 2. That the verdict is against law; 3. Errors in law occurring at the trial, and excepted to.

Respondent contends that the first error specified, to wit, the insufficiency of the evidence to justify the verdict, cannot be considered, for the reason that this appeal was not taken within sixty days after the rendition of the judgment. It is shown by the record that the judgment was rendered on the seventh day of April, 1893, and the appeal was taken on the nineteenth day of March, 1894. Section 4807 of the Revised

Statutes of 1887 provides, *inter alia,* that an appeal from a final judgment may be taken within one year after the entry of the judgment. But an exception to the decision or verdict, on the ground that it is not supported by the evidence, cannot be reviewed on an appeal from the judgment, unless the appeal is taken within sixty days after the rendition of the judgment. Hence, as this appeal is from the judgment, and was not taken within sixty days after the rendition thereof, said first error assigned cannot be considered.

It is also contended by respondent that the second error assigned, to wit, "that the verdict is against law,". cannot be considered, for the reason that it is "not in proper form." The appellant specifies and avers, in his statement on motion for a new trial, "that the verdict is against law, as applied to the facts proven in the case," and proceeds to support that averment by undertaking to show that the verdict is not supported by all of the facts proved by the evidence. This is simply another manner (under a different name) of showing that the evidence is insufficient to sustain the verdict, which cannot be done on this appeal. This court has no authority on this appeal to review all of the evidence to ascertain the facts proved, in order to determine whether the verdict "is against law" when applied to such facts. This would simply be reviewing the evidence to ascertain whether it was sufficient to sustain the verdict, which is not permissible on an appeal from the judgment, unless the appeal is taken within sixty days after the rendition thereof. If that were permissible, several of the grounds for a new trial enumerated in section 4439 of the Revised Statutes might be included in the one general ground, to wit, "that the verdict or decision is against law." Said section of the statute, in authorizing a new trial on the ground that the "verdict is against law," evidently does not intend to include in that ground all or any of the several distinct and separate grounds of the motion which are numbered and specified in said section. (See *Brumagim v. Bradshaw,* 39 Cal. 24.)

The appellant concedes that the most important question in the case is, "Has the plaintiff such title to the land in question as would enable him to maintain an action in ejectment, or an action to recover possession?" claiming that the judgment-roll on its face shows that he had. Owing to the importance of the case, we have concluded to dispose of it on its merits. The record shows that the land in controversy is within the limits of Boise City; that said city was settled in 1863, and incorporated in 1864; that a portion of it was platted in 1864; that it was situated upon unsurveyed public land, and was entered under an act of Congress entitled "An act for the relief of the inhabitants of cities and towns upon public lands," approved March 2, 1867 (see 14 U. S. Stats. 541), by the mayor of Boise City, in November, 1867; that is, the declaratory statement of the purpose of the inhabitants to enter it as a townsite was filed in the proper land office by Henry E. Prickett, mayor of Boise City, on November 23, 1867. A patent for the tract of land so entered was issued by the United States of America on the second day of May, 1870, unto the said mayor, in trust for the several use and benefit of the occupants of the townsite of Boise City, according to their respective interests. On the sixth day of January, 1871, the legislative assembly of Idaho territory passed an act prescribing rules and regulations for the execution of said trust by said mayor, or his successor in office, as to the disposal of the town lots in said city. (See Special and Local Laws of Idaho, sec. 148.) The record shows that appellant claimed several blocks in Boise City, by reason of his having occupied the same as a racetrack; that the tract of land in controversy was a part of said racetrack; that the appellant inclosed said racetrack with a fence in 1867 and 1868, and used the same for racing and other purposes until 1875. On the sixteenth day of January, 1871, said appellant filed his application with the mayor of Boise City for most of the land included within the said racetrack, as required by the act of the legislative assembly of Idaho above referred to. Said application did not include the land in controversy. The mayor of Boise City thereafter executed to ap-

pellant a conveyance for the land described in his said application. In 1875 the appellant left Boise City, and located at Walla Walla, in the then territory of Washington, and thereafter gave the said land no particular attention. The fences rotted, fell down, and were taken away, leaving the land in dispute uninclosed. Appellant has not resided in Boise City since 1875, but returned there temporarily in 1886, and remained at Nampa and Boise City until 1889. It is further shown that appellant made application to James A. Pinney, mayor of Boise City, for a deed to the land in dispute on the twenty-fourth day of June, 1891, which application was denied. It is thus shown that appellant left said land in 1875, and gave it no attention until in 1891. Thus, for sixteen years appellant exercised no acts of ownership over said land, and for that length of time abandoned the possession and occupancy of the same. The record also shows that the appellant knew the respondent had said land inclosed with a fence in 1878. The appellant testified that he was out to the land in dispute in 1878, and there found the respondent fencing said land, and made no objection to his doing so. In 1877 the respondent took possession of said land, and has occupied it continuously since that date, and has placed valuable improvements upon it, at a cost of about $5,000. He fenced it in 1878, and thereafter erected two dwelling-houses and other buildings thereon, and put out an orchard thereon. He made application to the mayor of Boise City for a deed to said premises, and a deed was executed to him, bearing date May 2, 1887. Whatever taxes have been assessed against said land have been paid by the respondent. While it is true that the land in dispute is not very accurately described in the assessment-roll, it was shown by the assessors who made the assessment (and I think properly so) that the description offered in evidence from said assessment-roll was intended to apply, and did apply, to the land in dispute and the improvements thereon.

From the record but one conclusion can be reached, and that is, if the appellant ever had any right to said premises as a townsite occupant, he abandoned it. In *Thompson v. Hoolbrook,*

1 Idaho, 609, it is held that if a person has at one time been an "occupant" of a town lot, within the meaning of the law, by erecting an inclosure around it, but, before his application for the deed, has suffered such inclosure to be destroyed by freshets or taken away by tenants, so as to leave the lot open to the public, he shall be deemed to have abandoned it, and another person may enter thereon, and become an occupant, so as to entitle him to a deed from the mayor. This decision was under an act of the legislative assembly to provide for the survey, platting, and disposal of the land in the city of Lewiston, Nez Perces county. While the said act is different in some respects from the act providing for the sale of town lots in Boise City, I think the principle above enunciated as to abandonment is applicable to the case at bar. Appellant cites *City of Pueblo v. Budd,* 19 Colo. 579, 36 Pac. 599, in support of his contention. The court holds in that case that the townsite act of Congress, in its intents and purposes, is analogous to the general pre-emption laws of the government. Section 5 of the pre-emption act of 1843 required that claimants should make known their claims "in writing to the register of the proper land office within three months of the time of the settlement, giving the designation of the tract and time of settlement; otherwise his claim should be forfeited." The court there quotes at some length from the celebrated case of *Johnson v. Towsley,* 13 Wall. 72. In that case Towsley had made settlement upon government land, and failed to file his declaratory statement within ninety days after settlement, but continued his possession, and did make his declaration before Johnson or anyone else made any claim to the land or any settlement upon it. The court held, under that state of facts, Towsley's right was not barred by the provisions of said section 5, "under a sound construction of its meaning." In *City of Pueblo v. Budd, supra,* the court, in commenting upon the doctrine of the case of *Johnson v. Towsley, supra,* say: "If an act that expressly provides for forfeiture upon failure to file a statement in conformity to its requirements is susceptible of this construction, then the provisions of section

4 of the townsite act, which provides that failure to file the required statement shall bar the right to a remedy only, ought not to be construed to work a forfeiture of a vested right in the land, so long as the occupant remains in possession of or exercises exclusive dominion over the same, and his failure to acquire the legal title thereto does not in any manner affect the rights of others." The respondents in that case failed to file their application in time, but remained in the actual occupation and possession of the disputed land, and the court held that no forfeiture was made to the city. The facts of that case were very different from the facts in the one at bar. In this case the appellant made proper application for the greater portion of the land within the racetrack on the sixteenth day of January, 1871, and procured the legal title thereto, and had actual possession of the remainder until 1875, when he left it, and has exercised no acts of dominion over it since, and laid no claim to it until 1891, thus allowing twenty years to intervene from the time of making application for a deed to a part of the land included in said racetrack before making application for the remainder; and permitted, without objection, the respondent to occupy and possess the same, and to expend about $5,000 in improvements on the disputed tract, without protest. The pre-emption settler upon public land had an inchoate right which, by complying with the law, would ripen into a legal title; but, if he failed to comply with the law, he forfeited his right. If he complied with the law as to settlement, cultivation, improvement, residence, making final proof, paying the government price, etc., the right to the legal title was then vested in him, and not before. Then the execution and delivery of the patent are the mere ministerial acts of the officer charged with that duty. In the case at bar, if the appellant's occupation, possession, and improvement were such as contemplated by the townsite act of Congress, it might have ripened into a legal title; but the record shows that it did not. He not only failed to make application for a deed, as required by law, but to pay the price for the land. The appellant never

had the legal right to said land, and whatever right he had was lost by abandonment.

It is contended that respondent went into possession through appellant; hence could not acquire any right by his possession. But there is nothing in that contention. The appellant himself testified that "the defendant was not in possession of this ground when he commenced this suit." He says: "No; I never sold this ground to Tiner. I contracted to sell it at one time. This was in 1878. He never took possession of it under that contract."

After a very careful consideration of the very able and elaborate argument made by appellant's counsel and the authorities cited, I am of the opinion that the appellant had neither possession of, nor a legal nor equitable title to, the land in dispute at the time this action was brought, and therefore cannot maintain this action. The judgment of the court below is affirmed, with costs in favor of respondent.

Huston, C. J., took no part in the hearing or decision of this case.

Morgan, J., concurs.