(May 14, 1906.)

## W. R. TRULL, Respondent, v. MODERN WOODMEN OF AMERICA, Appellant.

[85 Pac. 1081.]

APPEAL—ORDER DENYING NEW TRIAL—TESTIMONY OF PHYSICIAN—PRIVI-
LEGED COMMUNICATION—WAIVER OF PRIVILEGE—TIME OF WAIVER—
CROSS-EXAMINATION OF EXPERTS.

1. Where an appeal is taken from an order denying a motion for a new trial at a period of more than sixty days after the order is made and entered, such appeal is ineffectual and will be dismissed on motion of the adverse party.

2. Where the appeal from the judgment was not taken within sixty days after the rendition of the judgment, and no valid appeal has been taken from the order denying a motion for a new trial, the appellate court is without authority or jurisdiction to examine the evidence for the purpose of ascertaining whether or not it is sufficient to support the verdict and judgment.

3. Where in an application for life insurance the applicant stipulates and agrees that he waives all provisions of law prevent-ing a physician from testifying as to any information acquired by him while attending his patient or rendering him incompetent as a witness as provided in section 5958, Revised Statutes, such waiver is valid, and entitles the beneficiary named in the policy, as well as the insurer, in an action upon a policy issued on such appli-cation, to call and examine the physician who attended the insured

during his last sickness and have him answer questions which, but for such waiver would be regarded as privileged communications that the witness could not disclose.

4. Since the statute, section 5953, subdivision 4, Revised Statutes, authorizes the patient to waive the privilege of secrecy imposed on his physician, and does not fix any specific time at which such waiver can or must be made, no reason is discovered why the waiver may not equally as well be made by contract and in advance of the relation of physician and patient arising as at the time of the trial.

5. As to whether or not the privilege of secrecy granted by statute is a personal privilege attaching only to the person of the patient, or can be waived by his heir or legal representative, *quaere.*

6. The courts will be liberal in allowing a broad range of inquiry on cross-examination, and this rule is especially and peculiarly applicable when it comes to the cross-examination of that class of witnesses commonly called experts.

(Syllabus by the court.)

APPEAL from the District Court of the Second Judicial District for the County of Latah.   Hon. Edgar C. Steele, Judge.

Action by W. R. Trull, the beneficiary named in a benefit certificate issued by the Modern Woodmen of America on the life of John B. Trull, to recover the sum of $2,000, the amount for which the certificate was issued.   Verdict and judgment for the plaintiff, and defendant moved for a new trial.   New trial denied and the defendant appealed from the judgment and order denying a new trial.   Appeal from the order denying a new trial dismissed.   *Judgment affirmed.*

T. W. Bartley and S. S. Denning, for Appellant.

The patient alone can waive the secrecy of the privileged communications, and when such patient is dead, the matter is forever closed.   (*In re Nelson's Estate,* 132 Cal. 182, 64 Pac. 294; *In re Redfield's Estate,* 116 Cal. 637, 48 Pac. 794; *Harrison v. Sutter St. Ry. Co.,* 116 Cal. 156, 47 Pac. 1019; *Life Ins. Co. v. Trust Co.,* 112 U. S. 250, 28 L. ed. 708, 5 Sup. Ct. Rep. 119; *Grattan v. Ins. Co.,* 80 N. Y. 281, 36 Am. Rep. 617, 92 N. Y. 274, 44 Am. Rep. 372; *Pearson v. People,* 79

N. Y. 424, 35 Am. Rep. 524; *Eddington v. Life Ins. Co.*, 67 N. Y. 185; *Westover v. Life Ins. Co.*, 99 N. Y. 56, 52 Am. Rep. 1, 1 N. E. 104; *Renihan v. Dennin*, 103 N. Y. 573, 57 Am. Rep. 770, 9 N. E. 320; *Loeder v. Whelpley*, 111 N. Y. 239, 8 N. E. 874; *Freel v. Market St. Ry. Co.*, 97 Cal. 40, 31 Pac. 730.)

A hypothetical question propounded to an expert witness must be based upon the facts proven or admitted in the case. (*Kelly v. Perrault*, 5 Idaho, 221, 48 Pac. 45.)

Forney & Moore, for Respondent.

Under subdivision 3, section 4807, Revised Statutes, the appeal from the order granting or refusing a new trial must be taken within sixty days after the order is entered on the minutes of the court, or filed with the clerk. (*Moe v. Harger*, 10 Idaho, 194, 77 Pac. 645; *Cunningham v. Stoner*, 10 Idaho, 549, 79 Pac. 228.)

That the verdict is against the law, and that the judgment is against law, are matters which cannot be reviewed by this court at this time. (*Young v. Tiner*, 4 Idaho, 275, 38 Pac. 697; *Brumagim v. Bradshaw*, 39 Cal. 24.)

If the patient himself waives the privilege by a clause contained in the contract, that waiver is binding on anyone who claims under the contract, whether it be the patient himself or his representatives. (*Adreveno v. Mutual etc. Assn.*, 34 Fed. 870; *Foley v. Royal Arcanum*, 151 N. Y. 196, 56 Am. St. Rep. 621, 45 N. E. 456; *Alberti v. Railroad Co.*, 118 N. Y. 77, 85, 23 N. E. 35; *Roseau v. Bleau*, 131 N. Y. 177, 184, 27 Am. St. Rep. 578, 30 N. E. 52.)

A cross-examination of a party or of an expert should be allowed a liberal range, touching all matters testified to in chief, or tending to test the temper, motives, intelligence, accuracy, capability or means of knowledge of the witness. (*People v. Foley*, 64 Mich. 148, 31 N. W. 596; *Dillebar v. Life Ins. Co.*, 87 N. Y. 79; *McFadden v. Railway Co.*, 87 Cal. 464, 25 Pac. 681, 11 L. R. A. 252; *McLean v. City of Lewiston*, 8 Idaho, 472, 69 Pac. 478.)

AILSHIE, J.—This is an appeal from a judgment and
an order denying a motion for a new trial. The respondent
has submitted a motion to dismiss the appeal from the order
denying the defendant a new trial on the ground that the
appeal was not taken within sixty days after the entry of the
order as required by subdivision 3 of section 4807, Revised
Statutes. The order denying a new trial was made and en-
tered on the ninth day of October, 1905, and the appeal there-
from was not taken until the thirteenth day of March,
1906. Since the appeal from the order denying appellant's
motion for a new trial was not taken within the time pre-
scribed by the statute, it is ineffectual and must be dismissed,
and it is so ordered. (*Moe v. Harger,* 10 Idaho, 194, 77
Pac. 645; *Cunningham v. Stoner,* 10 Idaho, 549, 79 Pac.
228.)

The judgment in this case was entered on the twenty-sixth
day of May, 1905, but the appeal was not taken until March
13, 1906. The appeal from the judgment having been taken
after a period of more than sixty days had elapsed from the
rendition of the judgment and there being no appeal from the
order overruling the motion for a new trial, we have no
authority to examine the evidence for the purpose of deter-
mining its sufficiency to support the verdict nor for any other
purpose except to determine whether or not errors of law were
committed by the court in the course of the trial. Counsel
for appellant have argued that since they moved for a new
trial on the grounds that the verdict and judgment are both
"against the law," this court should examine the evidence
for the purpose of determining whether or not the jury
brought in a verdict in accordance with the instructions
given by the court. That contention is fully answered in
*Young v. Tiner,* 4 Idaho, 269, 38 Pac. 679, where this court
says: "It is also contended by respondent that the second
error assigned, to wit, 'that the verdict is against law,' can-
not be considered, for the reason that it is 'not in proper
form.' The appellant specifies and avers, in his statement
on motion for a new trial, 'that the verdict is against law,

as applied to the facts proven in the case,' and proceeds to support that averment by undertaking to show that the verdict is not supported by all of the facts proved by the evidence. This is simply another manner (under a different name) of showing that the evidence is insufficient to sustain the verdict, which cannot be done on this appeal. This court has no authority on this appeal to review all of the evidence to ascertain the facts proved, in order to determine whether the verdict 'is against law' when applied to such facts. This would simply be reviewing the evidence to ascertain whether it was sufficient to sustain the verdict, which is not permissible on an appeal from the judgment, unless the appeal is taken within sixty days after the rendition thereof.''

As the case is here only on appeal from the judgment, we are bound to confine our inquiries to the alleged errors of law.

This action was instituted to recover the sum of $2,000 claimed to be due the respondent as the beneficiary named in a benefit certificate issued by the appellant, Modern Woodmen of America, to one John B. Trull, now deceased. The only issue that was involved in the case in the trial court was as to whether or not the insured died of smallpox. The application for insurance contained a specific and express waiver of the right of recovery in case the insured should die of smallpox or varioloid. The company alleged that the insured died of smallpox, while the respondent, on the other hand, who is the beneficiary named in the certificate, contended that death resulted from erythemia and impetigo.

The first and principal question presented is as to the ruling of the court in permitting Dr. Taylor, who attended the insured during his last sickness, to testify as to the condition of the patient and what he learned from the patient in diagnosing the case. After the witness had testified at some length as to his visit and the condition in which he found the patient, he said: "I asked the man a question, what he had been taking, and he said he had been taking poison oak." Here counsel for appellant interposed: "We object to that, may it please the court, as not being competent testi-

mony, conversation that he had.''   The court replied:   "It
is part of the diagnosis,'' to which counsel for respondent
replied:   ''Something we have no way of disputing.''    There-
upon the witness continued:   "To make my diagnosis clear
and to find out, I asked this man what he had been taking,
and he tells me he had been taking poison oak, and I asked
him who prescribed this, and he told me a man by the
name of Dr. Fry had prescribed this and gave it to him.   I
changed the prescription and that is all that was said or
done, only prescribing to him.''    Section 5958, Revised Stat-
utes, contains the following provision:   ''There are particular
relations in which it is the policy of the law to encourage con-
fidence and to preserve it inviolate; therefore, a person
cannot be examined as a witness in the following cases: . . . .
4.   A physician or surgeon cannot, without the consent of
his patient, be examined in a civil action as to any informa-
tion acquired in attending the patient which was necessary
to enable him to prescribe or act for the patient.''

This provision of our statute is to be found in the statutes
of many of the states, and especially in California, New
York and Missouri.   It has been quite uniformly held that
such a statutory provision disqualifies a physician from testi-
fying concerning any ·facts learned by him or disclosures
made to him in the course of his professional treatment of or
attendance on a patient.   (*Freel v. Market St. Ry. Co.,* 97
Cal. 40, 31 Pac. 730; *In re Flint,* 100 Cal. 394, 34 Pac. 863; ·
*Streeter v. City of Breckinridge,* 23 Mo. App. 244; *Westover
v. Aetna Life Ins. Co.,* 99 N. Y. 56, 52 Am. Rep. 1, 1 N. E.
104; *Renihan v. Dennin,* 103 N. Y. 573, 57 Am. Rep. 770,
9 N. E. 320.)

It has also been held that the privilege accorded the patient
by such a statute is a personal privilege, and cannot be
waived for him by any other person, and that the death of
the patient makes a waiver impossible, and that the physician
can never thereafter be permitted to testify concerning any
matter touching his professional employment during the
life of the patient.   (*Westover v. Aetna Life Ins. Co., supra;
Freel v. Market St. Ry. Co., supra.*)   On this point, however,

there is great diversity of opinion. (See *Thompson v. Ish,* 99 Mo. 160, 17 Am. St. Rep. 552, 12 S. W. 510, and note on page 570.)

Counsel for respondent urge that since the statute specifically provides that this privilege of secrecy may be waived by the patient, and since the statute does not specify any particular *time at which the waiver shall be made,* it may be as effectually done by reason of a specific stipulation in the contract as at the time of the trial. The insured in this case was required to sign a written agreement and application for insurance, in which the following clause is contained: "And I hereby expressly waive for myself and beneficiaries the privilege or benefits of any and all laws which are now or may be hereafter enforced, making incompetent the testimony of or disqualifying any physician from testifying concerning any information obtained by him in a professional capacity." Respondent relies on the effect of this stipulation for a justification of the admission of the evidence of the attending physician. The effect of such a stipulation or waiver appears to have been considered by some of the courts in states having statutes similar to ours relative to privileged communications. We will briefly revert to a few of these authorities: In *Re Adreveno v. Mutual Reserve Fund Life Assn.,* 34 Fed. 870, the beneficiary had sued upon a life insurance policy, and it appeared that the application for the policy had contained a stipulation very similar to the stipulation in this case. The insurance company offered one of the attending physicians as a witness to prove that the insured had made false representations as to his physical condition and ailments, and upon the admission of such testimony, Judge Thayer said: "As the patient is at liberty to waive the privilege which the law affords him, it appears to me it is immaterial whether the patient waives the privilege by calling the physician to testify in his behalf, or whether he waives it, as in this case, by a clause contained in the contract on which the suit is brought; and if the patient himself waives the privilege by a clause contained in the contract, that waiver, in my judgment, is binding on anyone who

claims under the contract, whether it be the patient himself or his representative. The result is that, inasmuch as the assured by this application waived the privilege which the statute affords him, the father, for whose benefit the policy was issued, and who is now suing on the contract, is bound by that waiver. I therefore hold that the testimony is admissible.''

*Foley v. Royal Arcanum,* 151 N. Y. 196, 56 Am. St. Rep. 621, 45 N. E. 456, was an action on a mutual benefit certificate, where the application for the insurance had contained a stipulation waiving the privilege of secrecy imposed by statute on the attending physician. At the time the contract was made the New York Code of Civil Procedure, sections 834 and 836, appear to have been substantially the same as our statute, but after the making of the contract and prior to the commencement of the action on the benefit certificate, the legislature so amended the statute as to require the waiver to be made at the time of trial. The supreme court of New York in that case sustained the stipulation of waiver and permitted the witness to testify, quoting at length from the opinion of Judge Thayer in *Adreveno v. Mutual Reserve Fund Life Assn., supra.* The court, in concluding that opinion, said: ''It appears to us that these cases disposed of the question under consideration, that the waiver is not in contravention of any principle of public policy, and that the amendment to section 836 of the code, made after the contract, has no application.''

In the *Matter of Coleman,* 111 N. Y. 220, 19 N. E. 71, a firm of attorneys, Hughs & Northup, had been employed to prepare a will. After it had been drafted and submitted to the testator, he requested both members of the firm to sign and attest the same as witnesses thereto. Upon the probate of the will the question arose as to the competency of the attorneys to testify concerning the mental capacity of the testator at the time he executed the will. In considering the effect of the New York statute (Code Civ. Proc., sec. 836), and the privilege granted thereby to communications made in the course of professional employment and

the right of the client to waive the privilege, the court said: "There is nothing in this section requiring the waiver to be made in writing, or in any particular form or manner, or at any particular time or place; but it is required to be an express waiver, and made in such manner as to show that the testator intended to exempt the witness, in the particular instance, from the prohibition imposed by statute. . . . . It cannot be doubted that, if a client in his lifetime should call his attorney as a witness in a legal proceeding, to testify to transactions taking place between himself and his attorney, while occupying the relation of attorney and client, such an act would be held to constitute an express waiver of the seal of secrecy imposed by the statute, and can it be any less so when the client has left written and oral evidence of his desire that his attorney should testify to facts, learned through their professional relations upon a judicial proceeding to take place after his death? We think not. (*McKinney v. Grand St. etc. R. R. Co.*, 104 N. Y. 352, 10 N. E. 544.) The act of the testator, in requesting his attorneys to become witnesses to his will, leaves no doubt as to his intention thereby to exempt them from the operation of the statute, and leave them free to perform the duties of the office assigned them, unrestrained by an objection which he had power to remove." (To the same effect see *Alberti v. Railroad Co.*, 118 N. Y. 77, 23 N. E. 35; *Rosseau v. Bleau*, 131 N. Y. 177, 27 Am. St. Rep. 578, 30 N. E. 52.)

In the light of the foregoing authorities and with the understanding we gather as to the intention and purpose of the statute, we see no reason why the court should not give force and effect to the clause in the contract making the attending physician competent to testify in all matters the same as other witnesses. In that view of the case there could be no question but that the testimony of Dr. Taylor was properly admitted. The benefits of the waiver are equally as available to the beneficiary as to the insurer.

Appellant's sixth assignment of error is that the court erred in sustaining plaintiff's objection to the following question asked Dr. Taylor: "Q. At the time you understood

that, did you have any understanding as to whether Dr. Magee occupied any official position in Shoshone county?" It seems that Dr. Magee was the health officer of Shoshone county, and as such had established a quarantine over the house where Trull resided, and that Taylor knew of this fact. The defendant was, by the question propounded to the witness, endeavoring to show the jury that the doctor knew of the quarantine having been established by the proper health officer, and that it had been established on account of the health officer believing the disease to be smallpox. The question was undoubtedly a proper one and should have been answered. But the refusal of the court to permit the answer evidently did not prejudice the defendant. It fully and clearly appears from the testimony of the witness Taylor that he did in fact know that Magee was the health officer of the county, and that he also knew of the quarantine and the reasons that had been assigned for the same. That fact runs all through the record and is testified to by Dr. Magee. The jury had all the information on this point, and if the witness had answered the question it would only have amounted to at most a repetition of the evidence on that point.

Appellant's seventh assignment of error relates to the ruling of the court in permitting the witness, Dr. Adair, to answer the following question on cross-examination: "If a man died of the disease supposed to be smallpox, and the man who nursed him all that time had never been vaccinated, and did not take the smallpox at all from the patient, would you think it smallpox?" The principal objection urged by appellant to this hypothetical question is that it was not based upon the facts proven in the case. There was some evidence in the case that would justify a hypothetical question of the foregoing character, and bring it within the rule announced in *Kelly v. Perrault,* 5 Idaho, 221, 48 Pac. 45, and *McLean v. City of Lewiston,* 8 Idaho, 472, 69 Pac. 478. The rule is quite liberal in allowing a broad range of inquiry on cross-examination, and this rule is especially and particularly applicable when it comes to the cross-examination of that class of witnesses commonly called experts.

The eighth assignment is without merit, and requires no consideration here.

Appellant's last assignment of error is directed to the action of the court in permitting the witness Dr. Taylor to answer the following question: "Didn't he tell you that he wanted this to settle up the matter?" The witness at the time this question was asked was defendant's witness and the question was asked by plaintiff's attorney on cross-examination. He was testifying concerning a statement or proof which he had signed and delivered to the agent of the defendant company as a part of the death proof. This statement differed somewhat from the previous statement or certificate which the witness had signed as to the nature of the disease of which the insured died. The witness was testifying as to the statement made to him by defendant's agent, and the facts and circumstances under which the additional certificate was signed; and the reasons therefor. Taking into consideration the other facts appearing from the record, we do not think there was any error in permitting the answer to this question.

As previously stated, we have no authority or jurisdiction to examine the evidence in this case for the purpose of determining whether or not, as a matter of fact, it was sufficient to justify the jury in concluding that the insured did not die of smallpox. As to the questions of law presented, we do not think any error has been committed that would justify this court in reversing the judgment. The judgment is affirmed, with costs in favor of respondent.

Stockslager, C. J., and Sullivan, J., concur.