Ferneding, J.
The original action was upon an insurance policy issued by the plaintiff in error upon the life of William E. Long. The policy was made payable upon death of the assured to the defendant in error as beneficiary. The policy was issued on November 27, 1916. The assured died on September 25, 1917. The answer contains three defenses. The first is an admission of certain facts; followed by a general denial. The second asserts a claim that by a condition of the policy it was to become void if the assured at the time of the application and delivery of the policy was not in good health; also, that as a matter of fact the assured was not at said time in good health. The third defense is that the application contained certain representations which were wilfully false.
The trial resulted in a verdict and judgment for the plaintiff in the amount of the policy.
The plaintiff in error insists, first, that the trial court erred in allowing plaintiff below to open and close the case; second, that the court erred in several respects in its charge to the jury; and, third, that the verdict and judgment were against the weight of the evidence on both the second and third defenses.
This case was fully argued and the oral argument was supplemented by elaborate and painstaking briefs analyzing the evidence and authorities bearing upon the issues represented in the review of this case. We have carefully considered the record and the authorities cited.
Upon the right to open and close the case we have reached the conclusion that the burden of *254 proof upon all the issues tendered by the pleadings of plaintiff was upon the plaintiff and not the insurance company.
The plaintiff alleged in the petition that she had complied with all the conditions of the policy. This averment was not admitted. It therefore fell within the general denial of the answer. Accordingly, it was incumbent upon the plaintiff to offer some evidence upon this averment. The plaintiff offered the application for the policy, and the policy itself, and then rested. While this averment of the petition was not the foundation of the real controversy, nevertheless, from a technical standpoint, the burden of proof was upon the plaintiff. The action of the trial court in putting the burden of proof and conferring the right to open and close the case upon the plaintiff was not erroneous.
Upon examination of the general charge, as well as the request for special charges, we are of opinion that there was no prejudicial'error in respect to the charge.
The most difficult questions presented in the case are those involving the weight of the evidence upon the second and third defenses.
The second defense challenges the good health of the assured at the time of the application and issuance of the policy. We think this was a question of fact to be determined by the jury. The burden of proof upon the merits of the case rested with the insurance company. The question was in the first instance one for the jury. The jury were entitled to consider the evidence of physicians, and others, having a direct bearing upon *255 the question, and also the circumstances of the case.. It must be kept in mind that the assured who made the application and procured the insurance was dead and his testimony unavailable. The insurance company was under the obligation to investigate the risk at the time of the application and issuance of the policy. The fact that it did make the investigation and did conclude to accept the risk is some evidence, we think, in favor of the plaintiff, and called upon the insurance company for evidence to overcome the effect of this presumption. In the case of Mumaw v. The Western & Southern Life Ins. Co., 97 Ohio St., 1, Judge Johnson speaks of “the difficulties and impracticable character” of compelling the beneficiary after the death of the assured to undertake the task of producing evidence of the good health of the assured at the time of the application and issuance of the policy.
!He makes the following observations, at page 11:
“It is also common knowledge that policies are issued at the solicitation of the company, and it may well be said that it is the duty of the insurance company not to enter into a contract of such a character until it is convinced that the insured is in good health. It would seem to be a just and reasonable proposition that the insured has a right to believe that the company has become so convinced, and to rely on his contract, in the absence of fraud or misrepresentations on his part, or a failure of some warranty made by him. In such case the company is not denied any proper defense; but, if it asserts a defense, it must assume *256 the burden of proving it. The time to demand from the insured such satisfactory evidence is when the contract is being made and while the insured is alive.”
Dr. Hatcher, wrho was called as a witness by the insurance company, testifies as follows:
‘T said to him [Long] that he had better consult his physician and see whether or not he could not have his blood pressure reduced, feeling that it was not an organic type, and that if he was properly dieted and medicated that the blood pressure could be, reduced and that he might be a favorable risk after that treatment.”
If Dr. Hatcher, who had been especially consulted by Mr. Long, and who had the advantage of a personal examination, was of the opinion that the high blood pressure was not of an organic type and might be subject to treatment, certainly it would not be a far inference to assume that the assured himself felt that it was not a serious ailment or disease and might yield to a course of treatment.
Dr. A. H. Dunham was called by the insurance company as a witness. He made an examination of the assured prior to the present application for insurance. He testifies in full as to the nature and extent of his personal examination, and states he found nothing wrong with the heart or with any of the other organs and that the insured was in his opinion a good insurance risk.
Dr. D. B. Conklin made the medical examination upon which the insurance policy was issued. He testifies to the extent of his examination and his opinion as to the assured’s good health.
*257 Dr. Metier also testifies that Mr. Long was in splendid physical condition.
The insurance' company for its defense relies largely upon the testimony of Dr. Clark Sullivan, who was the physician of the assured and treated him at different times for what he called “mitral valve lesion of the heart.” Dr. Sullivan’s testimony was by deposition, and in his opinion the assured had been suffering from the affliction described.
The conflict in the testimony of these several physicians therefore became one of credibility and fell within the peculiar province of the jury.
The third defense, based upon misrepresentation, is subject to the following statute:
“Sec. 9391. No answer to any interrogatory made by an applicant, in his or her application for a policy, shall bar the right to recover upon any policy issued thereon, or be used in evidence upon any trial to recover upon such policy, unless it be clearly proved that such answer is wilfully false, was fraudulently made, that it is material, and induced the company to issue the policy, and that but for such answer the policy would not have been issued; and, also that the agent or company had no knowledge of the falsity or fraud of such answer.”
The questions and answers upon which the three defenses are founded are as follows:
“Question 14. I have never made an application nor submitted to an examination for life insurance upon which a policy has not been issued on the plan and premium rate originally applied *258 for except to the following companies or associations: (if none, so state).
“A. None.
“Question 17. What illnesses, diseases, injuries or surgical operations have you had since childhood?
“A. Operation for left inguinal hernia; date 1900; duration two weeks; date of complete recovery 1900; Hemorrhoidal operation 1913; two days, very mild (removal of tags), complete recovery 1913 (Minor ailment).
“Question 18. State every physician or practitioner who has prescribed for or treated you or whom you have consulted in the past five years.
“A. Dr. Clark Sullivan, Dayton, Ohio, 1913, Hemorrhoids.
“Question 19. Have you stated in answer to question 17 all illnesses, diseases, injuries or surgical operations which you have had since childhood?
“A. Yes.
“Question 20. Have you stated in answer to question 18 every physician and practitioner consulted during the past five years and the dates of consultations ?
“A. Yes.
“Question 21a. Are you in good health?
“A. Yes.
“Question 21b. If not, what is the impairment?
“A. None.
“Question 22b. How much weight have you lost in the past year?
“A. Seven pounds.
“Question 22c. If any change, state cause. '
“A. Gymnastic training to reduce.”
*259 The insurance company offered evidence that a former application for insurance was made by the assured to another company and rejected.
It also offered the evidence of Dr. Clark Sullivan to the effect that shortly prior to the application in the present case he treated the assured to reduce the blood pressure, and that this was done at the request of Long for the avowed purpose on the part of Long of making him eligible for insurance, and that later the assured notified the witness that he did not desire to continue the treatment as he had obtained the insurance.
We would have no difficulty in finding that the answer to the interrogatory as to being rejected for other insurance was false and that the remaining answers did not fully disclose the facts. However, we think it was the duty of the jury before finding this defense complete to go further and find that the evidence clearly established that the answers to the interrogatories were wilfully false. The question of the credibility of the witnesses upon this particular issue was primarily for the jury to determine. The plaintiff in the very nature of the case was deprived of the answering and explanatory testimony of the assured. As to the rejection of a prior application for insurance the jury may have found that the assured was not fully advised of such rejection, or of the facts in respect to that application. The burden of proof being upon the insurance company, an inference might fairly be indulged under the evidence in favor of the plaintiff upon the issue as to the asr sured having knowledge and information on this subject.
*260 In respect to the answers to the other interrogatories, it was for the jury to consider and determine whether the evidence made it clear that the assured willfully misrepresented the facts or willfully concealed material facts definitely called for by the interrogatories. In this connection it appears that the jury made the following special finding in response to interrogatories:
“Was William E. Long treated by Dr. Clark Sullivan at Dayton, Ohio, for excessive blood pressure and overweight in the summer or fall of 1916, and did Mr. Long know this fact when he made his answers to the Medical Examiner of the defendant Company, Dr. Conkling?
“A. Yes.
“Did William E. Long state every physician and practitioner whom he had consulted during the five years previous to making the application for the policy sued on, with dates of consultation?
“A. Yes.”
The first special finding is not conclusive of the fact that the assured knew that “excessive blood pressure and overweight were illnesses, diseases,” etc., within the general understanding of the application. One answer disclosed that the assured had undergone gymnastic training to reduce weight. Taking the answers together it would leave the question of blood pressure as the only question of real difficulty. This symptom has become somewhat alarming to physicians, but it is not clear that the assured as a layman understood the significance of high blood pressure and some weight would naturally be given by the jury to the fact that even the company itself did not consider over *261 weight of sufficient importance to require a medical examination and report upon that feature. It is clear that special interrogatories must be harmonized with the general verdict unless they are clearly repugnant. Davis v. Turner, 69 Ohio St., 101, tends to support the second special finding of the jury’s general verdict.
The burden of proof being upon the defendant, the jury were entitled to weigh the evidence and determine the credibility of witnesses. It is clear that the verdict of the jury should not be set aside upon the mere difference of opinion between the court and a jury. This is especially true where the case reaches a reviewing court and is heard upon the transcript of evidence. The rule is stated by Judge Mcllvaine in the case of Dean v. King, Pennock & King, 22 Ohio St., 118, at page 134. While there is some foundation for difference of opinion upon the weight of the evidence, we have reached the conclusion that the verdict of the jury and judgment of the trial court upon the issues joined by the second and third defenses are not contrary to the clear and manifest weight of the evidence. Finding no prejudicial error the judgment is affirmed.

Judgment affirmed.

Allread and Kunexe, JJ., concur.