Kinkade, J.
 

 The subject-matter of this action is a 20-payment life insurance policy issued by the New York Life Insurance Company, plaintiff in error, upon the life of George L. Snyder, the husband of Anna E. Snyder, defendant in error, who was named in the policy as beneficiary. Two full annual premiums were paid by the insured upon the policy. The policy matured, 15 months after its issue, by the death of the insured. Proofs of death were duly made, followed by a demand for the payment of the amount due upon the policy. The insurance company refused payment on the ground that the insured had willfully and knowingly made certain false and fraudulent statements in connection with the procuring of the insurance, the truth of which the insurance company had relied
 
 *695
 
 upon in issuing the policy. The insurance company tendered to the beneficiary, who was also the administratrix of the estate of her deceased husband, the return of the full amount of the two annual premiums paid, with interest thereon up to the time of the tender, and demanded the surrender of the policy. The tender and the surrender were both refused. The insurance company brought an action in the court of common pleas, seeking the cancellation of the policy and asking an injunction to prevent the beneficiary from prosecuting an action to recover upon the policy. The insurance company deposited in court the amount of the tender covering the premiums paid. The common pleas court refused the injunction prayed for. That action is still pending, and no hearing has. been had upon the merits.. The beneficiary then began this action to recover upon the policy. The petition contained the usual allegations in actions of this character. The answer admitted the issue of the policy, the payment of the two annual premiums thereon, the death of the insured, the due proof of death, and that no part of the amount due upon the policy had been paid, and denied the other allegations of the petition. The answer averred that there had been no legal delivery of the policy for the reason that it was stipulated in the application that the insured was not to have the policy if between the time of his medical examination and the issue of the policy he consulted with or obtained treatment from any physician. The answer averred that between the dates mentioned he had consulted with physicians and taken advice and treatment in respect to maladies that he then had and which
 
 *696
 
 continued with him until the time of and were the cause of his death.
 

 The second defense of the answer set forth in detail that the insured had willfully and knowingly made certain false and fraudulent statements for the purpose of inducing the company to issue to him the policy in question; that the company had no knowledge of the falsity of these statements, but believed each and all of them to be true. These false statements had reference particularly to the matter of Snyder having consulted with and taken treatment from physicians for physical maladies within a period stated, five years, prior to his application to the company for this insurance.
 

 If the allegations in the answer were in fact true, they were quite sufficient to render the policy void. The reply denied all these claimed false and fraudulent statements. On these issues the case went to the jury. At the close of the evidence the insurance company presented to the court two written instructions to be given to the jury before argument. The court refused these instructions for the reason, then assigned by the trial judge, that they did not correctly state the law. Exceptions were duly taken. These written requests will be again referred to later herein. Thereupon counsel for the beneficiary moved the court to instruct the jury to return a verdict for the beneficiary, in response to which motion the court, after quoting from Sections 9391 and 11494, G-eneral Code, said to the jury:
 

 “So far as this court is concerned this court takes the position that, legally, the effort of the insurance company and Snyder to disregard the
 
 *697
 
 statute rules of this state, by this waiver in the application for the insurance policy was against public policy and was not binding upon Mrs. Snyder, so the direction of this court is that this jury, under these rules, return a signed verdict in favor of the plaintiff for the amount appearing to be due on this policy, with interest, from the 10th day of August, 1923, to the 5th day of April, 1926, and return it into court.”
 

 The jury returned a verdict, as directed by the court, for the full amount due on the policy, and judgment was entered accordingly. A motion for new trial was overruled and exceptions saved. The Court of Appeals affirmed this judgment, and the insurance company prosecutes error to this court.
 

 Numerous errors are assigned as calling for the reversal of the judgments entered in the trial and appellate courts. The most of these errors relate to the excluding of evidence offered by the insurance company showing that the statements of Snyder in his application for insurance, and particularly in that part of his application covered by his answers to the medical examiner of the insurance company, that he had not consulted with or been examined by any. other physician with respect to his physical condition at any time within five years prior to the time of such examination, were willfully false. The insurance company called several physicians (some of whom testified by deposition), ■ and by them attempted to show that the answers given by Snyder were willfully and knowingly false and fraudulent, and were made to induce the insurance company to issue this policy of insurance. The trial court held all of this evi
 
 *698
 
 dence incompetent because the witnesses were disqualified by the provisions of Section
 
 11494 of
 
 the Q-eneral Code.
 

 The examination before the medical examiner, duly signed by Snyder, contained the following:
 

 “The applicant must answer these questions fully and with special care.
 

 “8. Have you ever suffered from any ailment or disease * * * of the stomach or intestines, liver, kidneys or bladder? No.
 

 “9. * * * D. Have you consulted a physician for any ailment or disease not included in your above answers? No.
 

 “E. What physician or physicians, if any, not named above, have you consulted or been treated by, within the last five years and for what illness or ailment? (If none, so state.) None.”
 

 The following forms a part of the medical examination found on page 91 of the record:
 

 “I agree, represent and declare, on behalf of myself and of every person who shall have or claim any interest in any insurance made hereunder, that I have carefully read each and all of the above answers, that they are each written as made by me, that each of them is full, complete and true, and that I am a proper subject for life insurance. Each and all of my said statements, representations and answers contained in this application are made by me to obtain said insurance, and I understand and agree that they are each material to the risk and that the company believing them to be true will rely and act upon them.
 

 “I expressly waive, on behalf of myself and of any person who shall have or claim any interest in
 
 *699
 
 any policy issued hereunder, all provisions of law forbidding any physician or other person who has heretofore attended or examined me, or who may hereafter attend or examine me, from disclosing any knowledge or information which he thereby acquired.”
 

 When the physicians were called and their testimony was excluded, proper offers to prove were made. The trial court was very frank and definite in his rulings upon this evidence. The requests to charge at the close of the evidence, made by counsel for the insurance company, were based upon the state of the case as it would have appeared if this rejected testimony had been admitted. Without this testimony in, the trial court might well have said that there was no evidence in the case justifying the giving of the requests to charge. The real error was prior to the presentation of these requests, in the excluding of the evidence offered. Had the evidence been in, the requests would have been proper, and their rejection would have been prejudicial error against the insurance company.
 

 Counsel for the beneficiary insists that she is not bound by any of the statements in the waiver made by the insured. It is entirely clear that the insured went to the fullest possible limits in his statements and waiver along the line of including everybody who might have or claim to have an interest in this insurance policy. It is claimed by counsel for the beneficiary that it is' againsl public policy to enforce this waiver, in view of the provisions of Section 11494, General Code, and that no waiver. is available except it be
 
 *700
 
 made in open conrt at the time of the trial. It is not claimed that there is any decision of this conrt which definitely decides this question. It is very plain why the insurance company considers the right to secure the doctors’ evidence as of the greatest value. In the first place, if the physician were permitted to testify, he would not have the same incentive to misrepresent that the insured might have. Furthermore, the physician has the full statement of the insured made to him, and, supplementing this, his own observation and tests made to determine the truth about the then real physical condition of the insured. After full disclosure made by the patient, the physician may know much more about the extent of the malady from which the patient is suffering than the patient can possibly know himself. It is therefore of the highest importance that the insurance company know to -#hat extent, if at all, an applicant has consulted with and procured advice and treatment from other physicians. And it is clearly important that the insurance company have the right to learn what medical advice and treatment the policy holder subsequently may take after the policy is issued. It may well be that later medical examinations and treatments will disclose the presence of maladies of long standing, and thereby establish the fact that they existed prior to the taking out of the policy. In fact, in this case the insurance company tendered the testimony of a physician, Dr. O. H. Schettler, who was consulted by the insured less than three months before the death of the insured, and to whom witness made a statement concerning a malady that he had been suffering
 
 *701
 
 from for 18 months last past, as shown by the offer to prove. This statement of the insured to Dr. Schettler was excluded, as was also the doctor’s testimony with reference to the condition of the insured at the time, and the doctor’s further evidence with reference to the findings made by him when performing an autopsy upon the body of the insured.less than 30 days thereafter.
 

 It is not necessary to go further in pointing out the importance of this class of testimony when offered to support the defense of claimed fraud and misrepresentation in the procuring of a life insurance policy. It is entirely self-evident that evidence of this character is of the highest importance in supporting such a defense, and its exclusion, when competent, is prejudicial error.
 

 The controlling question in this case is whether the waiver executed by the insured, as shown on page 91 of the record, above quoted, is available in support of a defense against the policy when sought to be enforced by the beneficiary. If it is, then the judgments entered herein must be reversed and the case remanded for a new trial. While there are some cases to the contrary, the very great weight of authority supports the claim that such waiver is available against the beneficiary. We cite the following: 6 Ruling Case Law, Section 108, p. 109; 25 Ruling Case Law, Section 272, p. 1040;
 
 Ausdenmoore et al., Exr’s.,
 
 v.
 
 Holzback,
 
 89 Ohio St., 381, 382, 383, 106 N. E., 41;
 
 Mutual Life Ins. Co.
 
 v.
 
 Long,
 
 12 Ohio App., 252;
 
 Michigan Mutual Life Ins. Co.
 
 v.
 
 Whittaker, Adm’r.,
 
 7 C. C., (N. S.), 1, 18 C. D., 688;
 
 Foley
 
 v.
 
 Royal Arcanum,
 
 151 N. Y., 196, 45 N. E., 456, 56 Am. St. Rep., 621;
 
 *702
 
 5 Wigmore on Evidence, (2d Ed.), 2388; 40 Cyc., 2400;
 
 Adreveno
 
 v.
 
 Mutual Reserve Fund Life Ass’n.,
 
 (C. C.), 34 F., 870;
 
 Trull
 
 v.
 
 Modern Woodmen of America,
 
 12 Idaho, 318, 85 P., 1081, 10 Ann. Cas., 53;
 
 Metropolitan Life Ins. Co.
 
 v.
 
 Brubaker,
 
 78 Kan., 146, 96 P., 62, 18 L. R. A., (N. S.), 362, 130 Am. St. Rep., 356, 16 Ann. Cas., 267;
 
 Sovereign Camp, Woodmen of the World,
 
 v.
 
 Farmer,
 
 116 Miss., 626, 77 So., 655;
 
 Fuller
 
 v.
 
 Knights of Pythias,
 
 129 N. C., 318, 40 S. E., 65, 85 Am. St. Rep., 744;
 
 Bryant
 
 v.
 
 Modern Woodmen of America,
 
 86 Neb., 372, 125 N. W., 621, 27 L. R. A., (N. S.), 326, 21 Ann. Cas., 365;
 
 National Annuity Ass’n.
 
 v.
 
 McCall,
 
 103 Ark., 201, 146 S. W., 125, 48 L. R. A., (N. S.), 418;
 
 Modern Woodmen of America
 
 v.
 
 Angle,
 
 127 Mo. App., 94, 104 S. W., 297;
 
 Maine
 
 v.
 
 Maryland Casualty Co.,
 
 172 Wis., 350, 178 N. W., 749, 15 A. L. R., 1536;
 
 Cromeenes
 
 v.
 
 Sovereign Camp, W. O. W.,
 
 205 Mo. App., 419, 224 S. W., 15;
 
 Wm. Laurie Co.
 
 v.
 
 McCullough,
 
 174 Ind., 1477, 90 N. E., 1014, 92 N. E., 337, Ann. Cas., 1913A, 49;
 
 Grand Rapids & Ind. Rd. Co.
 
 v.
 
 Martin,
 
 41 Mich., 667, 3 N. W., 173;
 
 New York Life Ins. Co.
 
 v.
 
 Wertheimer,
 
 (D. C.), 272 F., 730;
 
 New York Life Ins. Co.
 
 v.
 
 Goerlich,
 
 (C. C. A.), 11 F., (2d) 838;
 
 Metropolitan Life Ins. Co.
 
 v.
 
 Willis,
 
 37 Ind. App., 148, 76 N. E., 560;
 
 Dahlquist
 
 v.
 
 Denver & R. G. Rd. Co.,
 
 52 Utah, 438, 174 P., 833;
 
 Keller
 
 v.
 
 Home Life Ins. Co.,
 
 95 Mo. App., 627, 69 S. W., 612; 5 Joyce on Insurance (2d Ed.), Section 3820-A.
 

 We have no hesitancy in saying that it is not against public policy, nor in violation of the terms or spirit of Section 11494, General Code, to enforce such a waiver. To hold otherwise would be to
 
 *703
 
 open wide the doors of both fraud and suicide with respect to the procuring of life insurance policies, and it would jeopardize the soundness and safety of life insurance in general. No sound reason appears why a policy of insurance, attended by an agreement and waiver such as in this case, should not be enforced when the evidence sustains the claim that the policy was procured by false and fraudulent statements, knowingly made, to induce the issue of' the policy, when neither the insurance company nor its agent knew of the falsity of the statements made by the insured. To enter a judgment in favor of the insured, after excluding the evidence of physicians with respect to his physical condition at the time of the taking out of the policy, is not in furtherance of justice. Surely the insurance company has a clear right to say to an applicant for insurance, “We will not issue a policy of insurance to you unless you give to the company full and complete authority to acquire any information, which any physician may now possess or may hereafter possess concerning the state of your health at the time of taking out the policy.” It will be noted that the statement made by the insured, immediately preceding the waiver, is very broad indeed. No terms could be broader in scope. And then immediately thereafter follows the waiver, equally broad in scope. This language needs no interpretation. It is simple, plain, positive, and embraces the entire subject-matter to which the language refers. Any attempt to construe such language so as to destroy its scope and meaning is wholly unwarranted. No such attempt was made by the trial court or the Court of Appeals. They met the issue
 
 *704
 
 squarely and held it was against public policy to enforce such a waiver against the beneficiary.
 

 For the purpose of determining the rights of the parties to this action under this insurance policy, this agreement and waiver, deliberately entered into between the insured and the company, must be read as the law of this case. It is the plain duty of the courts to enforce contracts which parties have made for themselves. We cannot agree with the conclusions reached in this case by the trial court and the Court of Appeals.
 

 It follows by what has been said that the judgments of the lower courts must be reversed, and this cause must be remanded for a new trial in accord with this opinion.
 

 Judgments reversed and cause remanded.
 

 : Marshalll, C. J., Day, Allen, Robinson, Jones and Matthias, JJ., concur.