(No. 6800. April 10, 1941.)

ANDREW MURPHY, Appellant, v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, a corporation, Respondent.

[112 Pac. (2d) 993.]

REHEARING DENIED MAY 19, 1941

Hamer H. Budge, J. W. Galloway, and Walter L. Budge, for Appellant.

Richards & Haga, for Respondent.

GIVENS, J.—July 15, 1927, appellant purchased from respondent a life insurance policy, additionally providing for benefit payments for total and permanent disability as follows:

*"Section 3*

*"Total Disability.*—Disability shall be considered total when there is any impairment of mind or body which continuously renders it impossible for the Insured to follow a gainful occupation.

*"Permanent Disability.*—Total disability shall, during its continuance, be presumed to be permanent;

(a) If such disability is result of conditions which render it reasonably certain that such disability will continue during the remaining life time of the Insured; or,

(b) If such disability has existed continuously for ninety days.

*"Benefits.*

\* \* \* \* \* \*

" (b) *Waiver of Premium.*—The Company will also, after receipt of such due proof, waive payment of each premium as it thereafter becomes due during such disability."

Thereafter appellant paid the annual premiums on said policy until December 25, 1929, when he applied for disability benefits and cecessation of premium payments because assertedly suffering from arthritis. He thereupon received disability payments covering from December 25, 1929, to and including September, 1930. Payments were then discontinued during the months of October and November, 1930, and resumed again upon further application by appellant from December, 1930, to and including May 27, 1939, when the last payment was made and thereafter again discontinued.

August 14, 1939, respondent wrote appellant's attorney stating it considered appellant no longer disabled and that no payments would be made for periods subsequent to May 27, 1939, until further investigation was concluded. Following resultant correspondence and controversy over respondent's desire to have appellant go to Salt Lake City for examination, this suit was filed August 28, 1939, to recover disability payments for the months of June, July and August, 1939.

The jury rendered a verdict for respondent.

The assignments of error may be grouped into two divisions: (1) admission and rejection of evidence, and (2) instructions given and refused.

█ Certain X-ray pictures taken by a physician in appellant's employ were, on respondent's application, ordered submitted before trial to respondent's physician for examination. These were later introduced in evidence by appellant. It is contended that such pre-trial exam-

ination granted respondent was an invasion and violation of sec. 16-203, par. 4, I. C. A.[1]

The application for the policy contained the following provision:

" ... The insured expressly waives on behalf of himself and of any person who shall have or claim any interest in any policy issued hereunder, all provisions of law forbidding any physician or other person who has attended or examined, or who may hereafter attend or examine the insured, from disclosing any knowledge or information which he thereby acquired."

Which was by the terms of the policy made a part of the contract: "This policy and the application, copy of which is attached constitute the entire contract." (Sec. 14, par. 11 of the policy.) This waiver justified the action of the trial court. (*Trull v. Modern Woodmen of America*, 12 Ida. 318, 85 Pac. 1081.)

Appellant's amended complaint alleged his disability as follows:

## "IX

"That on or about December 25th, 1929, the plaintiff became totally and permanently disabled through some ailment, disease or infirmity, the exact nature and cause of which this plaintiff does not know. But that he is informed and believes, and upon such information and belief alleges, that since on or about December 25th, 1929, he has continuously suffered from a multiple arthritis, which condition is general throughout his limbs and body and which condition will continue to become progressively

---

[1] Sec. 16-203, I. C. A.: "There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person can not be examined as a witness in the following cases:

\* \* \* \* \*

"(4) A physician or surgeon can not, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."

worse; that the plaintiff is informed and believes, and upon such information and belief alleges, that from and after December 25th, 1929, he has continuously suffered from a disease or infirmity of the heart, and that the same is progressively and will continue to become worse; that as a result of the ailments and infirmities hereinabove set out plaintiff has at all times since December 25th, 1929, and does now have an impairment of his body which continuously renders it impossible for the plaintiff to perform all the acts necessary to follow his occupation of farming, and that plaintiff is not qualified nor physically fit to follow any other gainful occupation."

Dr. Bruce Budge, physician and surgeon, was called as a witness by appellant and testified he officed, and was associated with his brother Dr. Alfred Budge, then absent from the state; that both were medical examiners for respondent and for it both examined appellant, whose original disabling illness was arthritis; that appellant came to the office nine years ago to see Dr. Alfred Budge; that when the witness examined appellant January 13, 1940 (trial was January 15, 1940), the arthritis had definitely increased in degree; that the office records showed 83 visits by appellant in the last nine years. The witness then detailed the general progress of arthritis and stated it was his opinion appellant was totally and permanently disabled and that appellant's arthritic condition has been progressive, also that he had a chronic heart disease, muscle weakness, and leakage. The following excerpts are deemed essential to a proper elucidation of assignments following:

"Q. And do you say, then, that the heart condition has existed for the last ten years?

A. I do; in all probability it has. I have a notation in my records which I think refers to about 1934. I can find that if it's necessary—no, it's more recent than that,—1939—which indicates the condition then existed. But I feel that his heart condition must be undoubtedly have been present over a long period of time and probably caused by the affliction he suffered according to his allegation in 1929."

In cross-examination the witness stated:

"A. I have been associated with my brother since 1933.

Q. And sometimes Mr. Murphy would come up and see one of you, and sometimes he would see the other?

A. He would see me in the absence of my brother.

Q. And sometimes you would examine him, and sometimes your brother.

A. That's true.

Q. And your records there show your examinations in your office?

A. Yes, sir.

Q. And those are the records you are using?

A. Yes, these are my own records and our records.

Q. Your and your brother Alfred's?

A. Yes, sir.

\* \* \* \* \* \*

Q. And this heart condition you said existed since about 1934?

A. I believe that's the date. I can check that. No, pardon me, it's not my opinion that the heart disease probably existed since 1934, but my impression that we have evidence of it existing at least that long.

Q. That it wasn't normal?

A. Yes.

Q. Now, this detailed and rather intimate statement of arthritis you have given us, that is the recognized and adopted statement and theory of the medical profession?

A. It is, in arthritis of this type.

\* \* \* \* \* \*

Q. Are you familiar with your brother Dr. Alfred Budge's handwriting?

A. Yes, I am.

(Whereupon a letter dated July 29, 1939, from Dr. Bruce C. Budge to Mr. Thomas M. Fisher, was marked 'Defendant's Exhibit 9 for Identification'; a report of examination dated June 22, 1931, by Dr. Alfred H. Budge, Jr., was marked, 'Defendant's Exhibit 10, for Identifica-

tion'; and a report of examination dated December 18, 1935, by Dr. Alfred H. Budge, Jr., was marked, 'Defendant's Exhibit 11 for Identification.')

\* \* \* \* \* \*

Q. And handing you Defendant's Exhibits 10, and 11, I will ask you if those are your brother's signatures.
A. Yes, they are.

MR. EBERLE: I will offer these in evidence.

\* \* \* \* \* \*

MR. BUDGE: Now, if the Court please, I do object to the admission of Defendant's Exhibits 10 and 11 on the ground that I think they are incompetent. The person in whose handwriting those are established to be is not here. I do not so understand that the letter written by someone who can't be in the court room is admissible.

MR. EBERLE: He has testified from their records, and he is taking the place of his brother; the records, he testified are the office records; and sometimes one would examine him and sometimes the other.
(Argument of counsel, off the record.)

THE COURT: The objection is overruled. They may be admitted.
(Whereupon, Defendant's Exhibits 10 and 11 for Identification were each marked, 'Admitted in evidence.')
(Whereupon, an attending Physician's statement of disability, dated March 20, 1939, by Dr. Alfred H. Budge, Jr., was marked, 'Defendant's Exhibit 12 for Identification.')

Q. Just one more, Dr. Budge; If you will look and identify the signature on Exhibit number 12?
A. Yes, that's Alfred Budge's signature.

MR. EBERLE: I will offer number 12 in evidence.

(Whereupon, a letter dated May 24, 1939, from Dr. Alfred H. Budge, Jr., to defendant, was marked, 'Defendant's Exhibit 13, for Identification.')

MR. BUDGE: Same objection, Your Honor, that it's not competent.

THE COURT: Overruled. It may be admitted.

(Whereupon, Defendant's Exhibit 12 for Identification was marked, 'Admitted in evidence.')

Q. I said the last one was the last, but I have one more. Will you identify your brother's signature to that?

A. Yes, that's also his signature.

MR. EBERLE: I offer in evidence Defendant's Exhibit marked 13 for Identification.

MR. BUDGE: The same objection, that it's incompetent.

THE COURT: It may be admitted."

Appellant assigns as error the admission of Defendant's Exhibits 9, 10, 11, and 12, on the ground the party making them (Dr. Alfred Budge) did not appear as a witness during the trial, that they were privileged (disposed of above), self-serving (i.e., to respondent), and hearsay as to appellant.

Exhibit 10 is dated June 22, 1931, and is on a form "Report of Examination" of appellant made by Dr. Alfred Budge and by stamped notation evidently received by respondent's Salt Lake City office June 29, 1931. The report bears appellant's signature (but whether signed before or after the body of the report had been filled in is not shown) and was evidently made in connection with and for the purpose of appellant securing the disability payments under the policy, or as a check-up in connection therewith, and he did so receive compensation for June, 1931. There is this notation among others: "Heart normal-size rhythm."

Exhibit 11 is a report on a similar form dated December 18, 1935, stamped "received" by respondent's Salt Lake City office December 23, 1935, when appellant was receiving payments, with notation "chest normal including heart."

Exhibit 12 on a form entitled "Attending Physician's Statement of Disability. Bureau of Disability Claims,"

with respondent's printed name thereon, appellant's signature not appearing. There is no mention of the heart.

Exhibit 13, was on the letter head of the Doctors Budge, as follows:

"Mutual Life Insurance Co., of New York
New York City, New York

Attention: Mr. Halliday

"Gentlemen:

"Mr. Andrew Murphy, of Boise, Idaho, has consulted me at my office on March 13, 1939, March 24, 1939 and April 20, 1939.

"It is my opinion that Mr. Murphy is considerably improved over the past few months, and that he is, in my opinion, making a progressive improvement in his general health.

"Very truly yours,
"ALFRED BUDGE, JR. M. D.
"Alfred H. Budge, Jr. M.D."

Counsel for respondent read these exhibits to the jury, whereupon the following took place on re-direct examination; evidently as to exhibits 10, 11, 12, and 13:

"MR. BUDGE: Doctor, what was the question asked you with reference to these examinations that you were to make of Mr. Murphy?

MR. EBERLE: Now, just a minute. The questions are in writing, and the answers are in writing in the documents in evidence.

(Argument of counsel, off the record.)

THE COURT: Read the question.

MR. EBERLE: I object to it on the ground it is unintelligible.

THE COURT: The objection is sustained.

Q. Doctor, considering all of those questions which have been read, what would the final answer for determination be, medically speaking?

MR. EBERLE: Well, we object to that. He has answered every question in these exhibits, and they speak for themselves.

THE COURT: The objection is sustained.

Q. Doctor, has it been your intention at any time to

report Mr. Murphy as not being totally and permanently disabled?

MR. EBERLE: And we object to the question upon the ground that the doctor's intention was immaterial.

THE COURT: The objection is sustained.

Q. Then I will ask you, Doctor, have you at any time reported this man as not being totally and permanently disabled?

A. It is my distinct impression that I never have.

Q. Based upon your recent examination of him, would you say that the man had been totally and permanently disabled for the last ten years?

MR. EBERLE: We object to that question as being repetitious.

THE COURT: It is repetitious, all right. The objection is sustained."

Respondent seeks to sustain the admission of these exhibits thus:

" ... These documents make no reference to any heart ailment such as testified to by Dr. Bruce Budge, which he said was indicated by the records of the office. Some, if not all of these exhibits, were made at appellant's request in connection with applications for continuance of disability payments. They are obviously *records* of the physician, as much so as the records from which Dr. Bruce Budge testified but which he did not introduce in evidence. These records or reports (Exhibits 10, 11, and 12) were properly identified and they speak for themselves as to what appellant's physicians found as to his physical condition based on examinations made at the time the reports were made. They should be considered in connection with the testimony of Dr. Bruce Budge as to what the records of the office disclosed regarding appellant's physical condition. It is immaterial whether they are impeaching evidence or merely supplementary evidence as to what the records of the physician disclose. Dr. Bruce Budge testified from a partial record. The exhibits referred to were records of the office and must be considered as a basis for conclusion of what the entire record discloses."

On cross-examination, to contradict or at least weaken

or discredit the witness, respondent introduced these exhibits, and by later objection (not assigned as error), after their admission, prevented on re-direct examination, the witness' elucidation of the exhibits.

It was only negatively that these exhibits, except Exhibit 13, a letter (which apparently did not bear on the point involved) in any way contradicted Dr. Bruce Budge, i.e., by containing no reference to or statement of heart trouble. Conceding respondent's right to fully cross-examine Dr. Bruce Budge on these exhibits, permitting their use to weaken or discredit his testimony (*Remington v. Rhode Island Co.*, (R. I.) 93 Atl. 33), there was not sufficient cross-examination of Dr. Bruce Budge as to any contradictory feature of these exhibits to render them admissible as part of his cross-examination. (*Kroetch v. Empire Mill Co.*, 9 Ida. 277, 74 Pac. 868; *Young v. Anderson*, 33 Ida. 522, 524, 196 Pac. 193.) They did not impeach Dr. Bruce Budge, since they were not made by him and it was not shown to what if any extent his opinion of appellant's condition rested upon these exhibits, even though records of his brother with whom he officed. (*Servel v. Corbett*, 49 Ida. 536, 290 Pac. 200; *Owen v. Rothermel*, 21 Pa. Sup'r. 561.) The only connection between Dr. Bruce Budge and these reports of Dr. Alfred Budge was the ambiguous answers quoted above that they were office records.

The court's rejection of Plaintiff's Exhibit 18 for Identification (assigned as error), is to be considered in connection with the admission of Defendant's Exhibits 10, 11, 12, and 13.

Exhibit 18 consists of nine similar reports; one dated December 19, 1931, thus made five months after Exhibit 10, on a form similar to Exhibit 10, makes no mention of patient's heart, other than "chest normal." One dated June 14, 1932, on a form similar to Exhibit 10, thus in time between 10 and 11, does not mention heart. One dated June 21, 1932, on form similar to Exhibit 10, contains this notation: "Heart—small mitral stenosis, completely compensated." A letter of April 24, 1933, as follows:

"To Whom It May Concern:

"This is to certify that Mr. Andrew Murphy of Route No. 4 of Boise, Idaho, is totally and permanently disabled at the present time due to multiple arthritis, effecting primarily the joints of his fingers, toes and thoracic spine.

"He has also a bilateral rhumatic iritis.

"Signed:

"ALFRED BUDGE, Jr. M.D."

A form similar to Exhibit 12, dated December 6, 1933, no mention of heart. Similar form dated February 5, 1935, no mention of heart; similar report dated December 3, 1935, no mention of heart; similar form dated March 17, 1937, no mention of heart; similar form dated April 15, 1938, no mention of heart.

Having admitted Exhibits 10, 11, 12, and 13, it was prejudicially erroneous not to admit plaintiff's proposed exhibit 18, as explanatory of 10, 11, 12, and 13. (*King v. Hahn*, 40 Ida. 555, 563, 234 Pac. 937.)

■ There was a decisive disagreement and conflict between appellant and respondent on the trial, as to appellant's physical condition throughout the entire period of his claimed disability, hence all evidence thereon was material, though some was remote.

■ Appellant complains of the admission in evidence of Defendant's Exhibits 25, 26, 27, and 28, interoffice communications concerning appellant's policy, between the Salt Lake City and the New York offices of respondent. Exhibits 25 and 27 were not shown to have been made in the presence of appellant or communicated to him, and certain notations thereon were self-serving and prejudicial. Exhibit 25 stating in part:

"Please note examiner's report that Ins. is farming and able to do all his work."

And Exhibit 27:

"Reports which we have obtained in connection with this claim reveal that the Insured is no longer totally and continuously disabled within the meaning of the disability clause in his policy.

"We are advised the Insured is up and about and is active to the extent that we cannot consider him totally

disabled. Confidentially the Insured was examined by a Company Doctor and the Insured admitted to him that he did not expect further compensation.

"Under the circumstances the payment of disability benefits is being terminated.

"If the insured becomes totally disabled, in accordance with the meaning of the disability clause in the policy at some later date and satisfactory proof to that effect is furnished without expense to the company and the policy is in full force and effect and the Insured has not yet attained the age of sixty years, the matter will receive consideration.

"Please advise the Insured of our action, especially calling to his attention paragraph No. 4 of this letter and inform him that it will be necessary to pay all future premiums as they become due to keep the policy in force." (*Bloom v. Pacific Mutual Life Ins. Co.,* (Cal.) 259 Pac. 496; *Sovereign Camp W.O.W. v. Harris,* (Ala.) 153 So. 870; *Trotter v. Union Indemnity Co.,* 35 Fed. (2d) 104; *Givson v. McGuiness,* (Mass.) 192 N. E. 494; *McCormick v. Travelers' Ins. Co.,* (Mo.) 264 S. W. 916; *Pierstorff v. Gray's Auto Shop,* 58 Ida. 438, 445, 74 Pac. (2d) 171; *Whitman v. McComas,* 11 Ida. 564, 570, 83 Pac. 604; *Couch on Insurance,* vol. 8, p. 7047.)

Instruction No. 12, assigned as error, is as follows:

"You cannot find a verdict for the plaintiff if you find from the evidence that although plaintiff was sick, diseased, or in some degree afflicted, he continued to perform the usual and regular duties of his occupation to the extent that he gained a livelihood therefrom."

This instruction would justify a verdict for respondent if the jury found appellant did some work even though by so doing he was endangering his health or life, and it was therefore erroneous. (*Goble v. New World Life Ins. Co.,* 57 Ida. 516, 523, 67 Pac. (2d) 280; *Equitable Life Assur. Soc. v. Watts,* (Ala.) 160 So. 713; *Prudential Ins. Co. of America v. Girton,* (Ind.) 12 N. E. (2d) 379, 380; *Travelers Ins. Co. v. Blake,* (Okla.) 55 Pac. (2d) 975; *Mutual Life Ins. Co. v. Dowdle,* 71 S. W. (2d) 691; *Smithpeters v. Prudential Ins. Co.,* (Tenn.) 81 S. W. (2d) 392,

396; *American Bankers' Ins. Co. v. White,* (Miss.) 158 So. 347; annotation in 98 A. L. R. 788, 795.) Appellant by offering his requested instructions 2 and 5 sufficiently suggested a correct statement of the pertinent law involved to require that a modified statement of such requested instruction should have been given.[2]

 Appellant assigns as error the giving of Instruction No. 9 because of the emphasized phrase:

"The term 'a gainful occupation' as used in the policy of insurance here involved means any occupation or employment which the plaintiff is able to conduct or transact for gain or profit.

"To follow a gainful occupation, it is not necessary that the plaintiff be able to, or does, perform or discharge all of the duties or functions of such occupation. He is to be considered as following a gainful occupation *if he performs sufficient of the duties or tasks of any occupation so that he derives an income or profit from such occupation.*"

Whereas appellant contends the correct rule is that he must be able to perform sufficient of the duties of an occupation to derive a livelihood therefrom.

Construing the instructions together, the jury were given in effect a proper statement of the law in this respect. Enlarging on the term "gainful occupation," Instruction No. 10 states:

"In determining whether the plaintiff is or was totally disabled, you will bear in mind that by the terms of the policy total disability is defined as 'impairment of mind or body which continuously renders it impossible for the insured to follow a gainful occupation'; and in this regard you are instructed that by this definition it is not

---

[2] You are instructed that it is not necessary that the insured be wholly incapacitated to perform any duty incident to his usual employment or business, but that if he is prevented by his injury or illness from doing the substantial acts required of him in his business or occupation, or if his physical condition is such that, in order to be cured or to prolong his life, ordinary care and prudence require that he cease all work, he is totally disabled within the meaning of the insurance policy." (*American Bankers' Ins. Co. v. White, supra; Berry v. United States,* — U. S. —, 85 L. Ed. 576.)

meant that the plaintiff must be absolutely helpless, or unable to do anything worthy of compensation, or unable to perform any duty or occupation from which compensation, or gain might be derived. This provision means that if he is unable to perform the substantial and material acts of any gainful occupation in the usual and customary way, he is totally disabled."

And Instruction 11 states:

"The purpose of the disability provision or clause in the life insurance policy here involved is to provide a substitute for plaintiff's earnings if he is totally and permanently disabled by some impairment of mind or body which continuously renders it impossible for him to follow a gainful occupation. Therefore, you cannot find a verdict for plaintiff unless you find plaintiff has proven by a preponderance of the evidence that he was, during the period for which he seeks to recover disability benefits under said policy, totally and permanently disabled by some impairment of mind or body which continuously rendered it impossible for him to perform any work or conduct his business to an extent sufficient to provide him a livelihood." (*Heald v. Aetna Life Ins. Co.*, (Mo.) 90 S. W. (2d) 797; *Stoner v. New York Life Ins. Co.*, *supra; Barton v. Metropolitan Life Ins. Co.*, (Mo.) 103 S. W. (2d) 889; *Parks v. Maryland Casualty Co.*, 91 S. W. (2d) 1186; *Goble v. New World Life Ins. Co.*, *supra; Young v. Travelers Ins. Co.*, 13 Atl. 896; annotation in 98 A. L. R. 788.)

Appellant neither argues nor cites authorities in support of his assignment of error directed at Instruction No. 13, and this assignment will therefore not be considered. (*Lott v. Taylor*, 60 Ida. 263; *Carey v. Lafferty*, 59 Ida. 578; *State v. Snoderly*, 61 Ida. 314, 101 Pac. (2d) 9, and cases therein cited.)

Judgment reversed and cause remanded for a new trial. Costs to appellant.

Morgan and Holden, JJ., concur.

SUTTON, D. J.—I am not in accord with the holding of the majority that the trial court committed prejudicial

error in the admission of Defendant's Exhibits Nos. 9, 10, 11 and 12, or the rejection of Plaintiff's Exhibit No. 18. Nor am I in accord with the holding that prejudicial error was committed in the admission of Defendant's Exhibits Nos. 25, 26, 27 and 28. The portion of Exhibit No. 25 quoted and portions of Exhibit No. 27 are doubtless objectionable. However, they refer to the conditions existing in the latter part of 1930; and, in view of the fact the defendant thereafter made disability payments to the plaintiff for more than eight years, it is unreasonable to assume the jury were in anywise misled by the self-serving statements contained in those exhibits.

It is my belief Instruction No. 12 in itself is not erroneous. However, it should have been accompanied by an instruction covering plaintiff's theory contained in his requested instructions Nos. 2, 5 and 7. The failure to give such an instruction was prejudicially erroneous and for that reason I concur in the conclusion of the majority.

SUTPHEN, D.J. (Dissenting)—I do not feel that the errors found in the record in respect to the admission or rejection of evidence are of sufficient importance or relevancy to justify a reversal of the judgment. (I. C. A., 5-907.) And I can not conceive it to be reasonably probable that any jury would construe Instruction No. 12 as justifying "a verdict for respondent if the jury found appellant did some work even though by so doing he was endangering his health or life."

Appellant having failed to submit a legally correct instruction on the theory of his case that he was endangering his health or life in doing the work he had been doing, he should not be allowed to complain because the trial court did not work over and modify the incorrect instructions requested.